UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:22-CV-01580-PGB-LHP

GUILLERMINA LOPEZ,

     Plaintiff,

v.

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, INC.,

     Defendant.

---

**DEFENDANT EMBRY-RIDDLE AERONAUTICAL UNIVERSITY, INC.'S
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

---

Allison O. Kahn
CARLTON FIELDS, P.A.
CityPlace Tower, Suite 1200
525 Okeechobee Boulevard
West Palm Beach, Florida 33401
Telephone: (561) 659-7070

Markham R. Leventhal
Jason H. Gould
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone: (202) 965-8100

Irma Reboso Solares
Sean W. Hughes
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136
Telephone: (305) 530-0050

*Attorneys for Defendant Embry-Riddle Aeronautical University, Inc.*

## <u>TABLE OF CONTENTS</u>

*Page*

TABLE OF AUTHORITIES.................................................................................. iii

INTRODUCTION ............................................................................................... 1

RELEVANT FACTS ........................................................................................... 3

    A.    Administration and Management of the Plan....................................... 3

    B.    The Plan's Fund Options and TIAA's Compensation ......................... 4

    C.    Monitoring the Plan's Performance and Service Providers.................. 5

    D.    Plaintiff's Claims ............................................................................... 5

LEGAL STANDARD .......................................................................................... 6

ARGUMENT....................................................................................................... 11

I.      THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION ....................................................... 11

II.    PLAINTIFF'S FIRST CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.................................................... 12

    A.    Plaintiff Cannot Sufficiently Allege That Inclusion Of More Expensive Share Classes Is Enough To Establish Imprudence .......... 12

    B.    The Complaint Fails To State A Claim Based On Allegations That Defendant Failed To Investigate And Select Comparable Lower Cost Investments Or That The Plan's Funds Were Underperforming............................................................................... 16

    C.    The Complaint Fails To State A Plausible Claim That ERAU Failed To Monitor the Plan's Recordkeeping and Administrative Expenses ............................................................................................ 18

III.   PLAINTIFF'S SECOND CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ........................................ 23

# **TABLE OF CONTENTS**
(continued)

*Page*

IV.     THE COMPLAINT SHOULD ALSO BE DISMISSED BECAUSE IT IS A CLASSIC SHOTGUN PLEADING ................................................... 24

V.      DISMISSAL SHOULD BE WITH PREJUDICE BECAUSE AMENDMENT OF THE COMPLAINT WOULD BE FUTILE .............. 25

CONCLUSION ........................................................................................ 25

LOCAL RULE 3.01(g) CERTIFICATION ......................................... 26

CERTIFICATE OF SERVICE ............................................................. 28

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Albert v. Oshkosh Corp.*,
    47 F.4th 570 (7th Cir. 2022) ...................................................... 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................... 7, 8, 23

*Banks v. Secretary, Department of Health & Human Services*,
    38 F.4th 86 (11th Cir. 2022) ...................................................... 11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................... 7

*Brown v. Daikin America, Inc.*,
    2021 WL 1758898 (S.D.N.Y. May 4, 2021) .................................. 9

*Bryant v. Dupree*,
    252 F.3d 1161 (11th Cir. 2001) ................................................ 25

*Carrigan v. Xerox Corp.*,
    2022 WL 1137230 (D. Conn. Apr. 18, 2022) ............................ 18

*Cassell v. Vanderbilt University*,
    285 F. Supp. 3d 1056 (M.D. Tenn. 2018) .................................. 24

*Cockrell v. Sparks*,
    510 F.3d 1307 (11th Cir. 2007) ................................................ 25

*Conkright v. Frommert*,
    559 U.S. 506 (2010) ................................................................. 10

*Coventry First, LLC v. McCarty*,
    605 F.3d 865 (11th Cir. 2010) .................................................. 25

*Cunningham v. USI Insurance Services, LLC*,
    2022 WL 889164 (S.D.N.Y. Mar. 25, 2022) ......................... 18, 21

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ................................................................... 7

## TABLE OF AUTHORITIES
(continued)

*Page*

*Davis v. Washington University in St. Louis*,
    960 F.3d 478 (8th Cir. 2020) ....................................................... 19

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
    2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019)......................................... 18, 22

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) ................................................................8, 9

*Fritton v. Taylor Corp.*,
    2022 WL 17584416 (D. Minn. Dec. 12, 2022) ........................................... 20

*Gonzalez v. Northwell Health, Inc.*,
    2022 WL 4639673 (E.D.N.Y. Sept. 30, 2022) .............................16, 18, 19, 23

*Harris v. Ivax Corp.*,
    182 F.3d 799 (11th Cir. 1999)......................................................... 8

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ............................................... 8, 13, 15

*Horsley v. Feldt*,
    304 F.3d 1125 (11th Cir. 2002)....................................................... 8

*Hughes v. Northwestern University*,
    142 S. Ct. 737 (2022) ......................................................... 1, 9, 10

*Johnson v. Delta Air Lines, Inc.*,
    2017 WL 10378320 (N.D. Ga. Dec. 12, 2017) ........................................... 12

*Keister v. Bell*,
    29 F.4th 1239 (11th Cir. 2022)....................................................... 7

*Kopp v. Klein*,
    894 F.3d 214 (5th Cir. 2018) ...................................................... 17

*Krutchen v. Ricoh USA, Inc.*,
    2022 WL 16950264 (E.D. Pa. Nov. 15, 2022) ........................................... 21

# TABLE OF AUTHORITIES

## (continued)

*Page*

*Kurtz v. Vail Corp.*,
  511 F. Supp. 3d 1185 (D. Colo. 2021)................................................. 10, 12, 17

*Laufer v. Arpan LLC*,
  29 F.4th 1268 (11th Cir. 2022)...................................................... 11

*Martin v. CareerBuilder, LLC*,
  2020 WL 3578022 (N.D. Ill. July 1, 2020) .................................... 15

*Matney v. Barrick Gold of North America, Inc.*,
  2022 WL 1186532 (D. Utah Apr. 21, 2022) ................................. 15

*Matousek v. MidAmerican Energy Co.*,
  51 F.4th 274 (8th Cir. 2022) ................................................. 19, 20

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ......................................................... 9

*Nguyen v. Raymond James & Associates, Inc.*,
  2021 WL 1193554 (M.D. Fla. March 30, 2021) .......................... 24

*Patel v. Specialized Loan Servicing, LLC*,
  904 F.3d 1314 (11th Cir. 2018)................................................. 3, 4

*Patterson v. Morgan Stanley*,
  2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ................................. 16

*Paylor v. Hartford Fire Insurance Co.*,
  748 F.3d 1117 (11th Cir. 2014).................................................... 24

*Piazza v. Ebsco Industries, Inc.*,
  273 F.3d 1341 (11th Cir. 2001).................................................... 11

*Prado-Steiman ex rel. Prado v. Bush*,
  221 F.3d 1266 (11th Cir. 2000)..................................................... 11

*Renfro v. Unisys Corp.*,
  2010 WL 1688540 (E.D. Pa. Apr. 26, 2010)................................ 15

# TABLE OF AUTHORITIES
(continued)

*Page*

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011) ......................................................... 10, 14, 15, 25

*Rogers v. Baxter International Inc.*,
   710 F. Supp. 2d 722 (N.D. Ill. 2010) ............................................................ 23

*Rosen v. Prudential Retirement Insurance & Annuity Co.*,
   2016 WL 7494320 (D. Conn. Dec. 30, 2016) .............................................. 17

*Rzepkoski, et al. v. Nova Southeastern University, Inc.*,
   No. 0:22-CV-61147 (S.D. Fla.) ..................................................................... 1

*Sacerdote v. New York University*,
   9 F.4th 95 (2d Cir. 2021) .............................................................................. 9

*Santiago v. University of Miami*,
   2021 WL 1173164 (S.D. Fla. Mar. 1, 2021), *report and
   recommendation adopted*, 2021 WL 1165441 (S.D. Fla. Mar. 26,
   2021) .................................................................................................... 12, 24

*SFM Holdings, Ltd. v. Banc of America Securities, LLC*,
   600 F.3d 1334 (11th Cir. 2010) ..................................................................... 8

*Smith v. CommonSpirit Health*,
   2021 WL 4097052 (E.D. Ky. Sept. 8, 2021) .......................................... 20, 22

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022) ..................................................................... 20

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ...................................................................................... 7

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998) ........................................................................................ 6

*Taylor v. United Technologies Corp.*,
   2009 WL 535779 (D. Conn.),
   *aff'd*, 354 F. App'x 525 (2d Cir. 2009) ........................................................ 17

# TABLE OF AUTHORITIES
(continued)

*Page*

*Thole v. U.S. Bank N.A.*,
    140 S. Ct. 1615 (2020) ..................................................................... 7

*Tibble v. Edison International*,
    575 U.S. 523 (2015) ......................................................................... 8

*Trichell v. Midland Credit Management, Inc.*,
    964 F.3d 990 (11th Cir. 2020) ......................................................... 7

*Wehner v. Genentech, Inc.*,
    2021 WL 507599 (N.D. Cal. Feb. 9, 2021) .................................... 21

*White v. Chevron Corp.*,
    2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .................... 8, 12, 15

*Wilding v. DNC Services Corp.*,
    941 F.3d 1116 (11th Cir. 2019) ....................................................6, 7

*Yeyille v. Miami Dade County Public Schools*,
    643 F. App'x 882 (11th Cir. 2016) .............................................. 24

*Young v. General Motors Investment Management Corp.*,
    325 F. App'x 31 (2d Cir. 2009) ................................................... 21

## Statutes

15 U.S.C. § 80a-1 *et seq.* .......................................................................... 4

26 U.S.C. § 403 ......................................................................................... 3

29 U.S.C. § 1104 ....................................................................................... 9

## Rules

Federal Rule of Civil Procedure 8 ......................................................... 24

Federal Rule of Civil Procedure 12 ......................................................1, 7

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Embry-Riddle Aeronautical University, Inc. ("ERAU") hereby moves to dismiss the Class Action Complaint (ECF No. 1) (the "Complaint"). For the reasons set forth below, the Complaint fails to establish a basis for subject matter jurisdiction, fails to state a claim upon which relief can be granted, and violates Eleventh Circuit rules prohibiting shotgun pleadings. Accordingly, the Court should grant this motion and dismiss the Complaint.

## **INTRODUCTION**

The Complaint in this matter is a cookie-cutter version of a pleading that has been filed, with minor alterations, in over 40 similar lawsuits around the country. *See Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022) (collecting citing references). In particular, most of the Complaint's allegations are identical to those in *Rzepkoski, et al. v. Nova Southeastern University, Inc.*, No. 0:22-CV-61147 (S.D. Fla.), filed by counsel for Plaintiff in this action, aside from minor adjustments. *Compare* Complaint ¶¶ 1-31, 34-63, 67-95, 100-107, 110-120, *with Rzepkoski* Complaint ¶¶ 1-71, 75-90, 93-114 (copy attached as Exhibit A).[1] In this action, Plaintiff claims that ERAU acted imprudently and violated fiduciary duties owed to participants in and beneficiaries of a retirement

---

[1] The Complaint was apparently copied from another lawsuit with more than one plaintiff as it refers to the Plaintiff as "they" in several places. *See, e.g.*, Complaint ¶ 21 (Plaintiff has standing to bring this action on behalf of the Plan because they participated in the Plan and were injured by the Defendant's unlawful conduct."). The Complaint also refers to entities that have nothing to do with ERAU or the Plan. *See, e.g.*, Complaint ¶¶ 24, 90 (referring to VALIC), ¶ 84 (referring to Capital Research).

plan offered by ERAU pursuant to section 403(b) of the Internal Revenue Code (the "Plan"). In general, the Complaint contains conclusory allegations that ERAU failed to prudently evaluate and monitor investment options available under the Plan, resulting in allegedly excessive fees. Plaintiff also alleges that ERAU failed to monitor and ensure that the Plan was paying reasonable compensation to its recordkeeper.

The vast majority of the allegations in the Complaint are nothing more than quotations to case law and articles about retirement plans in general that have nothing to do with ERAU or the Plan. Notably, the Complaint does not identify any investment options that the Plaintiff actually invested in under the Plan; nor does it reveal when she allegedly invested. The Complaint is also devoid of any facts showing how or through what specific investments the Plaintiff allegedly suffered any harm, or how any such harm occurred. Rather, the Plaintiff attempts to establish her own standing through general allegations regarding all Plan participants. As demonstrated below, Plaintiff has failed to meet her burden of establishing Article III standing.

In addition, the Complaint contains many allegations that do not apply or are blatantly false. Although the Court must generally accept allegations as true on a motion to dismiss, it need not accept allegations that are contradicted by documents referenced or incorporated into the Complaint. Applying this standard, and given the failure to allege specific facts regarding Plaintiff's actual participation in the Plan, the Complaint fails to state a viable claim under the Employee Retirement Income Security Act ("ERISA"). Courts have rejected theories of imprudence when, as here, the allegations are not well pled. Moreover, because the Complaint incorporates all

preceding allegations into each Count of the Complaint (*see* Complaint ¶ 115), it is an impermissible "shotgun" pleading under Eleventh Circuit precedent.  For all of these reasons, the Complaint should be dismissed.

## RELEVANT FACTS[2]

### A.    Administration and Management of the Plan

ERAU established and maintains a 403(b) retirement plan for its employees. A 403(b) retirement plan is a tax-advantaged retirement savings plan available to employees of educational institutions, among other organizations. 26 U.S.C. § 403(b)(1)(A).  The ERAU Plan covers approximately 4,772 employees.  *See* 2020 Form 5500 at 2 (copy attached as Exhibit B).[3] ERAU engaged The Teachers Insurance and Annuity Association ("TIAA") to serve as recordkeeper for the Plan.  TIAA became the Plan's sole recordkeeper in October 2014.  TIAA is among the most highly-regarded and lowest-cost providers of annuity products to 403(b) plans.  Previously known as TIAA-CREF, TIAA is comprised of two distinct legal entities: (1) TIAA, an insurance company; and (2) the College Retirement Equites Fund ("CREF"), a

---

[2] ERAU will treat the non-conclusory allegations of the Complaint as true for purposes of this motion to dismiss, to the extent they do not conflict with documents, but ERAU notes that most everything in the Complaint is false and disputed.

[3] Because the Complaint expressly references the 2020 Form 5500 (Complaint ¶ 35), the Court may consider the document without converting this motion to dismiss into a motion for summary judgment.  *See Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1318 n.3 (11th Cir. 2018) (court may consider documents referenced in the complaint that are central to plaintiff's claims, attached to a motion to dismiss, and not disputed, without converting the motion to one for summary judgment).

registered investment company under the Investment Company Act of 1940, codified at 15 U.S.C. § 80a-1 *et seq.*

TIAA provides recordkeeping services to the ERAU Plan.  These recordkeeping services generally include recordkeeping, accounting, consulting, investment advisory and other administration services.  As the Plan's recordkeeper, TIAA is responsible for maintaining up-to-date records of each participant and beneficiary's account, processing daily transactions, executing fund transfers, issuing communications, and maintaining tax-reporting requirements, among other things.  *See* TIAA Services Agreement at 12-14 (copy attached as Exhibit C).[4]

### B.    The Plan's Fund Options and TIAA's Compensation

The Plan offers a number of different investment options for Plan participants. Complaint ¶ 64.  Costs and fees vary among these investment options.  *Id.*  Part of TIAA's compensation as recordkeeper is tied to those costs.  *Id.* ¶¶ 84, 100, 105. Plaintiff alleges that the cost of providing recordkeeping services depends on the number of Plan participants, and plans "with large numbers of participants can take advantages of economies of scale by negotiating a lower … fee." *Id.* ¶ 80.

There are 47 investment options in the Plan: 36 mutual funds, 9 variable annuities, and 2 fixed annuities; this includes 10 target retirement date funds.  *See* TIAA, *Your Full List of Investments,* https://www.tiaa.org/public/tcm/erau/view-all-

---

[4] Given the multiple allegations regarding TIAA and services performed by plan recordkeepers (Complaint ¶¶ 77-80, 106-07), this exhibit is properly considered by the Court.  *See Patel, supra* note 3.

investments ("ERAU Plan Investment List") (copy attached as Exhibit D).[5]  As the Complaint concedes, Plan participants choose those options in which they wish to invest.  Complaint ¶ 28.

### C.      Monitoring the Plan's Performance and Service Providers

ERAU is required to monitor both the performance of the Plan's investment options, and the fees and costs associated with them.  Complaint ¶¶ 30, 47, 56.  There is no well-pled allegation in the Complaint that ERAU did otherwise.  Plaintiff simply alleges without support that ERAU failed to compare (i) the performance of the funds selected by the Plan recordkeeper to comparable investments, and (ii) the fees charged by the Plan recordkeeper to those of alternative service providers.  *Id*. at ¶ 112.

### D.      Plaintiff's Claims

The Complaint attempts to assert two "Claims for Relief."  Complaint ¶¶ 110-114, 115-120.  The first claim alleges breaches of fiduciary duties of prudence while the second claim alleges a failure to adequately monitor other fiduciaries and service providers. *Id*.  Nowhere in the entire Complaint, however, does the Plaintiff ever allege what investment options she has invested in under the Plan, if any, or during what time period.   Ironically, the Complaint includes a heading entitled "Specific Allegations" on page 16 beginning with paragraph 52.  Paragraphs 52 to 62, however, contain *no facts* specific to ERAU or the Plan.  Indeed, these paragraphs, like most of

---

[5] Given that the Complaint expressly references an alleged list of Plan investment options (Complaint ¶¶ 7, 28, 49, 63-64, 67, 71, 73, 75), this list of current funds in the ERAU Plan is properly considered by the Court.

the Complaint, consist predominantly of quotations to case law, articles, treatises, and agency pronouncements.   Such conclusory allegations are not facts and cannot establish Article III standing or any viable claim.

Paragraph 64 of the Complaint contains a chart of purported funds for which "lower-cost share classes" were allegedly available (Complaint ¶ 66), but the Plaintiff *does not allege that she actually invested* in any of the funds listed in the chart.  Indeed, she does not identify *any fund* in which she actually invested, or when.   Paragraph 73 falsely alleges, in contradiction to the chart, that "all of the funds offered through the Plan are issued by the parties recordkeeper, TIAA."   To add additional confusion, the Complaint states, "Plaintiff is not making a claim against Defendant for using revenue sharing to pay recordkeeping fees" (*id*. 82), but then includes multiple paragraphs complaining about revenue sharing.  *Id*. ¶¶ 83, 84, 87, 100, 102-105, 119c.

## **LEGAL STANDARD**[6]

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies."  *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124–25 (11th Cir. 2019).  In the absence of Article III standing, a court lacks subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109–10 (1998). To establish standing under Article III, a plaintiff must demonstrate: (1) "an injury in fact that is concrete, particularized, and actual or imminent;" "(2) the defendant likely caused his

---

[6] Unless otherwise indicated, all emphasis in this motion is added, and all internal citations and quotations are omitted.

injury," and "(3) judicial relief would likely redress his injury." *Keister v. Bell*, 29 F.4th 1239, 1256 (11th Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)).[7]  As the party invoking federal jurisdiction, the plaintiff bears the *burden* of establishing standing by alleging facts that "plausibly" demonstrate each element. *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020).  Moreover, "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

In putative class actions, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Wilding*, 941 F.3d at 1124–25.  "There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020). That is, a plaintiff has standing to assert an ERISA fiduciary breach claim only if they seek redress for injuries they themselves suffered; they lack standing to assert injuries only to others or the Plan as a whole. *See id.* at 1619–22.

Rule 12(b)(6) requires dismissal of a complaint if it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court must accept well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiffs

---

[7] "A concrete injury must be de facto; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (quotations omitted).  The term "concrete" is intended to "convey the usual meaning of the term—'real,' and not 'abstract.'" *Id.* (quoting Webster's Third New International Dictionary 472 (1971)).

must establish "*more than a sheer possibility* that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  The Supreme Court has emphasized that a motion to dismiss is an "important mechanism for weeding out meritless [ERISA] claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

In addition to facts alleged in the complaint and any attached exhibits, when "ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings v. Banc of Am. Secs.*, 600 F.3d 1334, 1337 (11th Cir. 2010); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute"); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (courts may consider documents attached to a motion to dismiss without converting the motion into one for summary judgment, if the attached documents are central to the plaintiff's claims and not in dispute).[8]

"An ERISA fiduciary's duty is derived from the common law of trusts." *Tibble v. Edison Int'l*, 575 U.S. 523, 528 (2015).  ERISA requires fiduciaries to use "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct

---

[8] For example, in ERISA cases, courts have considered on motions to dismiss such documents as summary plan descriptions, Forms 5500, fee disclosures, and fund prospectuses. *See*, *e.g.*, *White v. Chevron Corp.*, 2016 WL 4502808, at *14–15 (N.D. Cal. Aug. 29, 2016) (considering plan documents and Form 5500s); *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (considering SPDs and fund prospectuses).

of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). When reviewing fiduciary-breach claims under Rule 12(b)(6), courts conduct a "context specific" inquiry that gives "due regard to the range of *reasonable judgments* a fiduciary may make based on her experience and expertise." *Hughes*, 142 S. Ct. at 742. A court therefore "focuses on a fiduciary's conduct in arriving at an investment decision, not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 107 (2d Cir. 2021).

The prudence of an ERISA fiduciary is measured according to the objective prudent person standard. *Id*. at 107. Under this standard, the prudence of a fiduciary's actions are "judged based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight." *Brown v. Daikin Am., Inc.*, 2021 WL 1758898, at *6 (S.D.N.Y. May 4, 2021). "Because the content of the duty of prudence turns on the circumstances prevailing at the time the fiduciary acts, . . . the appropriate inquiry will necessarily be context specific," suggesting that courts should rely on a holistic approach when evaluating a plan fiduciary's actions. *See Hughes*, 142 S. Ct. at 742 (quoting *Fifth Third Bancorp*, 573 U. S. 409, 425).

Because the Complaint contains no allegations regarding the actual process the fiduciaries employed in making decisions, Plaintiff must allege sufficient factual matter from which the Court may reasonably *infer* the fiduciary's decision making process was unlawfully flawed. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). It is not enough to simply disagree with a fiduciary's decision. Nor is it sufficient for

a plaintiff to merely allege that an investment did poorly, resulting in loss—relative underperformance is insufficient to state a claim. *Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1196 (D. Colo. 2021).  At times, the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise. *See Hughes*, 142 S. Ct. at 742.

ERISA affords fiduciaries flexibility and discretion to administer each plan according to the unique needs of its participants and the intent of the plan sponsor, without overly-restrictive bright-line rules, micromanagement by participants, or transforming the courts into quasi plan administrators.  *See*, *e.g.*, *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) ("Congress sought to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.").  "[T]he fiduciary standard is flexible, such that the adequacy of a fiduciary's independent investigation and ultimate investment selection is evaluated in light of the character and aims of the particular type of plan he serves." *Renfro v. Unisys Corp.*, 671 F.3d 314, 322 (3d Cir. 2011).

As shown below, the Complaint's allegations fall well short of establishing that the Plaintiff herself suffered any Article III injury.  Nor do the allegations support a plausible inference that ERAU employed an unlawful process in evaluating the Plan's investments and fees.  To the contrary, the allegations demonstrate that the Plan's investment lineup and fees are objectively reasonable.

-10-

## **ARGUMENT**

### I.  **THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**

To establish Article III standing, a plaintiff must show that they suffered an injury in fact.  "To establish an injury in fact at step one, the plaintiff must demonstrate that [she] suffered an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Laufer v. Arpan LLC*, 29 F.4th 1268, 1272 (11th Cir. 2022) (cleaned up).  Plaintiff has failed to demonstrate that she suffered a "concrete and particularized" and "actual or imminent" injury because the Complaint fails to allege that she actually invested in any of the investment options that she criticizes as underperforming.  Indeed, the Complaint wholly fails to identify any specific fund in which the Plaintiff invested monies, the amount of any investment, or the time frame of any investment.  Such complete failure to allege any personal harm or injury fails to establish standing as a matter of law.  *See, e.g., Banks v. Sec'y, Dep't of Health & Hum. Servs.*, 38 F.4th 86, 98 (11th Cir. 2022) (dismissing claim when plaintiff failed to plausibly and clearly allege that he personally suffered a concrete and particularized injury); *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1350 (11th Cir. 2001); *see also Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) ("a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim").

Plaintiff does not have standing to assert that she was injured by a purported breach of fiduciary duty that resulted in excessive fees paid for a particular investment

option if she did not invest in that option.  Nor does she have standing to complain that a "lower-cost share class" might have been available for a fund in which she did not invest.  *See Johnson v. Delta Air Lines, Inc.*, 2017 WL 10378320, at *1 (N.D. Ga. Dec. 12, 2017) (granting 12(b)(1) motion when plaintiffs failed to show that they suffered a concrete injury by not properly alleging that they were invested in the criticized investment funds).  The Complaint does not explain how the offering of any funds caused Plaintiff a concrete injury.  *Santiago v. Univ. of Miami*, 2021 WL 1173164, at *7 (S.D. Fla. Mar. 1, 2021), *report and recommendation adopted,* 2021 WL 1165441 (S.D. Fla. Mar. 26, 2021).  Because Plaintiff has failed to demonstrate that she suffered a concrete and particularized injury, she lacks Article III standing and the Complaint should be dismissed.

## II.  PLAINTIFF'S FIRST CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A.  Plaintiff Cannot Sufficiently Allege That Inclusion Of More Expensive Share Classes Is Enough To Establish Imprudence

Plaintiff claims generally that ERAU breached its fiduciary duty by selecting more expensive share classes when other low-cost share classes were allegedly available for the same fund.  Complaint ¶ 63.  In considering such claims, courts have routinely held that "[a]lleging only the inclusion of more expensive share classes is not enough" to suggest imprudence.  *Kurtz*, 511 F. Supp. 3d at 1199; *see also White v. Chevron Corp.*, 2016 WL 4502808, at *11 (N.D. Cal. Aug. 29, 2016) (finding that the assumption that the mere inclusion of a fund with an expense ratio that is higher than that of the lowest share class violates the duty of prudence is insufficient).  Here,

Plaintiff does exactly what courts have previously cautioned against. Plaintiff simply alleges, without more, that ERAU did not prudently monitor the Plan to determine whether it was invested in the lowest-cost share class available. Complaint ¶ 63. However, as the *Hecker* court noted, "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker*, 556 F.3d at 586. Thus, Plaintiff's naked allegation that a lower-cost share class may exist is not sufficient to establish a claim for breach of fiduciary duty under ERISA.

In the Complaint, Plaintiff points to twelve funds with share classes that she alleges are more expensive than possible alternative share classes. Complaint ¶ 64. Notably, the fund that the Complaint states has the highest expense ratio, the Victory RS Small Cap Growth Fund, is not offered in the ERAU Plan. *See* ERAU Plan Investment List (Exhibit D). Plaintiff also alleges that many of these funds are issued by TIAA, which she claims is "especially troubling." Complaint ¶ 67. While there are funds issued by TIAA that are offered in the Plan, the Plan provides participants with a diverse mix of investment options and expense ratios, not just TIAA-issued funds as Plaintiff falsely alleges. *Id.* at ¶ 73; ERAU Plan Investment List (Exhibit D). Plaintiff's assertion that ERAU allowed TIAA to freight the Plan with unreasonably expensive and poorly performing TIAA funds (Complaint ¶ 67) has no factual basis.

The decision in *Renfro* is particularly instructive. The plaintiffs in *Renfro* claimed that defendants breached their fiduciary duties by, inter alia, failing to adequately leverage the plan's bargaining power; offering retail, rather than institutional, share

class investment options;[9] and allowing the plan's recordkeeper and only investment-fund provider to receive excessive investment and recordkeeping fees through the plan's expense ratios. *See Renfro*, 671 F.3d at 319, 326–27. Even accepting plaintiffs' allegations as true, the court found that the allegations could not support a reasonable inference that the defendants' decision-making "process was flawed." *Id*. at 327. The court emphasized that the plausibility of fiduciary breach claims asserting excessive investment and recordkeeping fees must be evaluated "against the backdrop of the reasonableness of the mix and range of investment options" offered. *Id*. at 326. Thus, considering the mix and range of options offered under the defendants' plan—which included 73 diverse investments with expense ratios ranging from 0.10% to 1.21%—the court held that plaintiffs' challenges to the plan's investments and fee structure could "not plausibly support" a fiduciary-breach claim under ERISA. *Id*. at 327–28.

The same conclusion is warranted here. The ERAU Plan's investment lineup is even more favorable to participants than the one approved in *Renfro*. The Plan offers a similarly diverse mix and range of investment options. *See* ERAU Plan Investment List (Exhibit D). Moreover, the ERAU Plan's investment options, with expense ratios ranging from just 0.03% to 1.06%, are even cheaper than those at issue in *Renfro*. *Id*. Indeed, the ERAU Plan offers participants 20 options with expense ratios at or below

---

[9] There are good reasons for offering both retail and institutional share class options, as the Plan does here. The inclusion of retail share classes ensures that a plan's expense ratios will cover all of its expenses without the need to levy additional fees on participants for recordkeeping services. For this reason, the use of retail share classes is common and well within the range of reasonable fiduciary conduct.

0.10% (the low end of the range in *Renfro*).  *Id.*

Many other courts have also previously found that a breadth of investments and range of fees offered by plan fiduciaries was reasonable as a matter of law.  *See Matney v. Barrick Gold of N. Am., Inc.*, 2022 WL 1186532, at *6 (D. Utah Apr. 21, 2022) (granting defendant's motion to dismiss when the plan's recent offerings included a wide variety of investment options with expense ratios ranging from 0.06% to 1.07%); *Martin v. CareerBuilder, LLC*, 2020 WL 3578022, at *6 (N.D. Ill. July 1, 2020) (dismissing prudence claims concerning funds with expense ratios between 0.04% and 1.06%); *White*, 2016 WL 4502808, at *11 (rejecting a claim of excessive investment fees where complaint alleged fees ranging from .05% to 1.24%); *Hecker*, 556 F.3d at 586 (affirming dismissal of an excessive-fee claim where "[a]t the low end, the expense ratio was .07%; at the high end, it was just over 1%").

ERISA does not require fiduciaries to get the best deal imaginable for the Plan; it requires them to act carefully, skillfully, prudently, diligently, and solely in the interest of participants and beneficiaries.  *Renfro v. Unisys Corp.*, 2010 WL 1688540, at *6 (E.D. Pa. Apr. 26, 2010), *aff'd*, 671 F.3d 314 (3d Cir. 2011).  As stated above, the expense ratios for the funds in the ERAU Plan range from .03% to 1.06%.  *See* ERAU Plan Investment List (Exhibit D).  Unquestionably, the Plan's investment menu falls comfortably within the "reasonable mix and range of investment options" approved in the above cases.  *Renfro*, 671 F.3d at 327-28.  Accordingly, the Complaint does not allege a plausible breach of duty under ERISA.

**B.     The Complaint Fails To State A Claim Based On Allegations That Defendant Failed To Investigate And Select Comparable Lower Cost Investments Or That The Plan's Funds Were Underperforming**

Plaintiff has failed to set out factual allegations from which a court may reasonably infer that the decision to retain any funds in the Plan was the product of an unlawful decision-making process.  *See Gonzalez v. Northwell Health, Inc.*, 2022 WL 4639673, at *7 (E.D.N.Y. Sept. 30, 2022) (finding that plaintiff failed to allege that defendant was imprudent for retaining certain funds when plaintiff failed to compare the funds to appropriate benchmark indices).  Although Plaintiff claims generally that ERAU failed to remove alleged underperforming investments, Plaintiff does not identify any specific investments and does not base her claim of underperformance on facts tied to a plausible benchmark index.  *See Patterson v. Morgan Stanley*, 2019 WL 4934834, at *10 (S.D.N.Y. Oct. 7, 2019) (holding that a comparative benchmark index to demonstrate underperformance must generally be consistent and substantial to support an inference of imprudence).  The Complaint is devoid of any adequate benchmark allegations to reasonably criticize ERAU Plan funds.  Thus, Plaintiff has not pled a plausible claim for breach of fiduciary duty based on underperformance.

Plaintiff also alleges in conclusory fashion that the Plan's investment options have been dominated by high-cost, actively-managed funds, despite the fact that these funds charged grossly excessive fees compared with alternative funds. Complaint ¶ 71.[10]  This allegation contradicts the actual list of Plan investment offerings and need

---

[10] This contention is baseless.  Offering actively managed funds is not imprudent per se and the Plan offers both passively and actively managed investments.  *See*, *e.g.*,

not be accepted as true.  ERAU Plan Investment List (Exhibit D).  While Plaintiff makes the sweeping allegation that ERAU acted imprudently by failing to investigate and select unidentified alternative investments, she does not point to any alternative funds that were available to ERAU.  Nowhere does the Complaint allege anything imprudent about ERAU's process for selecting funds.  In fact, it does not address at all ERAU's process for selecting or retaining fund options, monitoring expenses, or managing the overall Plan.  *Kurtz*, 511 F. Supp. 3d at 1197.  Plaintiff must allege facts that plausibly establish that no reasonable fiduciary would have retained a set of investments had the fiduciary engaged in proper monitoring, and that abandoning the investments could have prevented losses.  *See Kopp v. Klein*, 894 F.3d 214, 221 (5th Cir. 2018).  It is not enough for Plaintiff to simply allege that an investment did poorly and that this caused her harm.  *See Kurtz*, 511 F. Supp. 3d at 1196.  Here, Plaintiff does not even point to any funds that she alleges were underperforming or that a reasonable fiduciary would have dropped upon monitoring the performance.  Plaintiff's broad allegation that the Plan and its participants lost millions of dollars by offering underperforming investments (Complaint ¶ 72) is not a well-pled allegation which must be accepted as true.  Thus, Plaintiff has failed to plausibly state a claim of imprudence.[11]

_____

*Rosen v. Prudential Ret. Ins. & Annuity Co.*, 2016 WL 7494320, at *13–15 (D. Conn. Dec. 30, 2016); *Taylor v. United Techs. Corp.*, 2009 WL 535779, at *10 (D. Conn.), *aff'd*, 354 F. App'x 525 (2d Cir. 2009).

[11] As noted above, Plaintiff incorrectly alleges that all of the funds offered through the Plan are issued by TIAA.  Complaint ¶ 73.  Of the 47 fund options offered

**C.   The Complaint Fails To State A Plausible Claim That ERAU Failed To Monitor the Plan's Recordkeeping and Administrative Expenses**

Plaintiff's excessive-fees claim is analyzed under the same general framework as her imprudent-retention claim.  *Gonzalez*, 2022 WL 4639673, at *9.  At the motion to dismiss stage, the key question is whether Plaintiff's "circumstantial factual allegations" are sufficient to "allow the court to reasonably infer the process" of managing the Plan's fees was unlawfully "flawed."  *Cunningham v. USI Ins. Servs.*, *LLC*, 2022 WL 889164, at *3 (S.D.N.Y. Mar. 25, 2022) (quoting *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at *5 (S.D.N.Y. Sept. 18, 2019)).  In making that assessment, courts consider the "particular services rendered by the recordkeeper[,] … the fees of comparable plans and recordkeepers at the time[,] … and the bargaining power of the plan to negotiate competitive recordkeeping fees." *Carrigan v. Xerox Corp.*, 2022 WL 1137230, at *5 (D. Conn. Apr. 18, 2022).

Plaintiff has not made allegations permitting a reasonable inference that ERAU's process as to recordkeeping fees was flawed.  The Complaint's allegation that Plan participants paid excessive fees is based in part on a comparison of the recordkeeping fees billed to ERAU Plan participants to average fees reported in the 401k Averages Book.  Complaint ¶¶ 94-95.  However, this comparison provides no

---

in the Plan, only four of the funds are issued by TIAA while eight of the funds are issued by CREF.  *See* ERAU Plan Investment List (Exhibit D).   In fact, more than half (24) of the funds are issued by Vanguard. *Id.*  Thus, Plaintiff's assertion that ERAU allowed TIAA to freight the Plan's entire investment menu with investments that generate excessive fees for TIAA (Complaint ¶ 67) is demonstratively incorrect.

insight into what a plan of like size and assets charges for recordkeeping services on average to its plan participants. *See Gonzalez*, 2022 WL 4639673, at *10 (finding that the excessive fee claim was not properly pled by plaintiff because the 401k Averages Book figure that plaintiff relied on reflected only the average direct fees paid by the smaller-plan participants, and was thus not an appropriate benchmark for plaintiff to rely on). Plaintiff compares ERAU's Plan that has 4,772 participants and approximately $500 million in assets to plans with 200 and 2,000 participants with $20 million and $200 million in assets respectively. *Id.* ¶ 95.

Additionally, the average recordkeeping cost that Plaintiff alleges from the 401k Averages Book reflects the average *direct* fees paid instead of the *total* fees paid for recordkeeping. For example, Plaintiff claims that participants of a plan with 2,000 participants and $200 million in assets pay an average direct recordkeeping cost of $5 per participant. *Id.* However, Plaintiff conveniently omits that the same participant in the same plan pays an average of $160 for indirect fees in revenue-sharing. *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 280 (8th Cir. 2022) (affirming dismissal of plaintiff's recordkeeping claim finding that "the 401K Averages Book, is similarly unhelpful ... suggest[ing] that the average plan with 2,000 participants and $200 million in assets paid $160 per participant in revenue-sharing and $5 in recordkeeping-administration fees."). It is almost impossible to tell if these figures provide a meaningful benchmark. *See Davis v. Wash. Univ. in St. Louis,* 960 F.3d 478, 484–85 (8th Cir. 2020). For one thing, these figures leave out the total fees charged for individualized services like "loans" and "distributions," making them a less-than-

helpful benchmark. *Matousek*, 51 F.4th at 280. For another, they analyze smaller plans: those with less than half the number of participants (up to 2,000 participants) and under a quarter of the total assets. *See Smith v. CommonsSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022) (discounting comparisons to smaller plans that "might offer fewer services and tools to plan participants"). Thus, the 401k Averages Book is not a legitimate benchmark to which to compare the ERAU Plan.

Without legitimate facts showing that the total fees paid by Plan participants are higher than the total fees paid by another comparator, Plaintiff has failed to plausibly allege that ERAU breached its fiduciary duties by allowing excessive fees paid to TIAA. *Smith v. CommonsSpirit Health*, 2021 WL 4097052, at *11 (E.D. Ky. Sept. 8, 2021) (dismissing plaintiff's excessive recordkeeping claim in part because "it is unclear how much the [p]lan pays in total recordkeeping fees and how that amount stacks up against the average recordkeeping cost listed in the 401(k) Averages Book").

Further, Plaintiff alleges that ERAU failed to undertake a Request for Proposal ("RFP") to determine whether the Plan could obtain better recordkeeping and administrative fee pricing from other service providers. Complaint ¶¶ 88-90. This allegation does not plausibly show a fiduciary breach. *Fritton v. Taylor Corp.*, 2022 WL 17584416, at *8 (D. Minn. Dec. 12, 2022) ("[T]he factual assertion that there is nothing to suggest that Defendants engaged in an RFP process seems to be another way of speculating this did not happen, and that is insufficient under Rule 12(b)(6)").

Even if the above deficiencies were not enough, Plaintiff's claim would fall short because she fails to plead that ERAU allowed higher recordkeeping fees than the

average plan for a comparable "basket of services." *Cunningham*, 2022 WL 889164, at

*4.   A plaintiff "must plead administrative fees that are excessive in relation to the

*specific* services the recordkeeper provided to the *specific* plan at issue." *Wehner v.

Genentech, Inc.*, 2021 WL 507599, at *5 (N.D. Cal. Feb. 9, 2021) (emphasis in original);

*see Young v. GM Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (requiring plaintiffs

to "allege that the fees were excessive relative to the services rendered").   Plaintiff

points to four managed plans in the Complaint and alleges that because ERAU's Plan

is much smaller, it should have been cheaper to manage with fees ranging from $25 to

$30 per Plan participant.   Complaint ¶¶ 96-97.   This assertion is meaningless.   First,

the managed plans that Plaintiff points to are not similar to ERAU's Plan because

these plans have tens of thousands of participants with billions of dollars in assets.   *Id*.

For example, the Kaiser Permanente Supplemental Savings and Retirement Plan to

which Plaintiff refers has 46,943 participants and manages $3,793,834,091 in assets,

compared to ERAU's Plan which is almost 90% smaller, with 4,772 participants and

$491,424,400 in managed assets.   *Id*.; 2020 Form 5500 at 2, 19 (Exhibit B).   The

Complaint does not point to any plans that are comparable in size to the ERAU Plan

that have recordkeeping fees within the $25 to $30 range that Plaintiff cites.   Further,

these large plans that Plaintiff cites do not use TIAA as their recordkeeper.   Complaint

¶ 96.   *See Krutchen v. Ricoh USA, Inc.*, 2022 WL 16950264, at *2 (E.D. Pa. Nov. 15,

2022) (holding that plaintiff did not provide a meaningful benchmark when comparing

defendants' plan to "benchmark" plans, with only one of those benchmark plans using

the same recordkeeper as defendants).   "The complaint is devoid of allegations as to

the quality or type of recordkeeping services the comparator plans provided." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022).

Second, Plaintiff contradicts her own allegation that ERAU should have only charged recordkeeping fees of $25-$30, like the large managed plans cited in the Complaint.  Complaint ¶¶ 96-97.   Plaintiff claims that plans with large numbers of participants can take advantage of economies of scale by negotiating lower recordkeeping fees.  *Id.* ¶ 80.  Taking this allegation as true, the Court could infer that the large managed plans with over 30,000 participants would have more bargaining power than the ERAU Plan with under 5,000 participants.  Thus, Plaintiff's allegation that the ERAU Plan should be paying the same amount in recordkeeping fees as these large managed plans is not plausible.  *Id.* ¶ 97.

Additionally, Plaintiff does not allege that there are entities that could provide the Plan with services comparable to TIAA's at lower rates – let alone name any of those providers or describe their service-based pricing models.  *Smith*, 2021 WL 4097052, at *11 (dismissing an excessive fee claim in part because "[p]laintiff has failed to identify another recordkeeper that would have been willing to conduct the same service as [the recordkeeper] at the assertedly reasonable rate of $30 per person"); *Ferguson*, 2019 WL 4466714, at *8 ("Plaintiff did not compare the [p]lan's record keeping service to an alternative a prudent fiduciary would have selected or provide any additional facts to support their assertion that the administrative fees were excessive.").  While Plaintiff alleges that the services that TIAA provided were nothing out of the ordinary (Complaint ¶ 107), the Complaint does not even list all the services

-22-

that TIAA provides to the Plan or allege facts that those services were worth less than the current amount the Plan pays for those services. *Id.* ¶ 106.

Plaintiff's allegation that the ERAU Plan should have been able to negotiate a recordkeeping cost anywhere from $25 to $30 per participant is a legal conclusion about what a prudent fiduciary of a particular sized plan should be able to negotiate "couched as a factual allegation". *See Gonzalez*, 2022 WL 4639673, at *11 (quoting *Iqbal*, 556 U.S. at 678).[12]

## III. PLAINTIFF'S SECOND CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiff's second claim for relief alleges that ERAU failed to adequately monitor other fiduciaries and service providers. Complaint ¶¶ 115-120. This claim is derivative of Plaintiff's first claim and fails for the same reasons. *See*, *e.g.*, *Rogers v. Baxter Int'l Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010) (noting that "several [district] courts have held that a failure to monitor claim is derivative in nature and must be premised [on] an underlying breach of fiduciary duty"). Plaintiff has not alleged any facts challenging ERAU's failure to monitor any other person or entities responsible for administrating the Plan. Indeed, no such persons or entities are named in the Complaint. Plaintiff alleges only that ERAU breached its fiduciary monitoring duties

---

[12] As the *Gonzalez* court explained: "Plaintiff alleges that other courts have concluded that a plan with $3.4 billion in assets and 41,863 participants *should* be paying $30 per participant" and that the market rate for jumbo plans within the top one percent of plans *should* be $35 per participant. But this allegation appears to be "a legal conclusion" about what a prudent fiduciary of a particular sized plan should be able to negotiate "couched as a factual allegation." *Id.*

by: failing to monitor its (unnamed) appointees; failing to monitor their (unidentified) process; and failing to remove the unnamed appointees whose performance was inadequate (in unspecified ways). *Santiago*, 2021 WL 1173164 at *2. This suggests that Plaintiff does not know whether ERAU in fact delegated its fiduciary duties or to whom. Plaintiff alleges no facts showing what process of monitoring other fiduciaries existed or how it was deficient. This claim should be dismissed. *See Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1062, 1067 (M.D. Tenn. 2018) (dismissing plaintiffs' duty to monitor claim when the complaint was devoid of facts about the fiduciary monitoring process, how it was deficient, or how it harmed plaintiffs).

## IV.   THE COMPLAINT SHOULD ALSO BE DISMISSED BECAUSE IT IS A CLASSIC SHOTGUN PLEADING

To properly state a claim, a complaint must, among other things, provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Complaints that fail to adhere to those standards are "shotgun pleadings" which the Eleventh Circuit has repeatedly condemned. *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125-26 (11th Cir. 2014). The Eleventh Circuit recognizes four types of shotgun pleadings, including "(i) those in which each count adopts the allegations of all preceding counts …." *Nguyen v. Raymond James & Assocs., Inc.*, 2021 WL 1193554, at *2 (M.D. Fla. March 30, 2021) (citing *Yeyille v. Miami Dade Cnty. Pub. Schs.*, 643 F. App'x 882, 884 (11th Cir. 2016)). The Complaint here falls squarely within this first category. *See* Complaint ¶ 115 ("Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint as if fully set

forth herein"). Accordingly, under binding precedent, the Complaint is fundamentally defective and should be dismissed. *Id*.

## V.  DISMISSAL SHOULD BE WITH PREJUDICE BECAUSE AMENDMENT OF THE COMPLAINT WOULD BE FUTILE

When a court grants a motion to dismiss, the court need not permit amendment where amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Amendment is futile "when the complaint as amended would still be properly dismissed." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010); *see also Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."). The plan documents on their face show that Plaintiff cannot successfully plead that ERAU acted imprudently. The documents establish that the Plan had a diverse amount of investment offerings with a variety of low-cost, reasonable fees for those offerings. Courts have previously found that such a mix and range of investment options is reasonable as a matter of law. *Renfro*, 671 F.3d at 328. Amendment by Plaintiff would be futile and should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Class Action Complaint with prejudice.

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel hereby certifies that we conferred in good faith with counsel for Plaintiff via email on December 20, 2022 and on December 21, 2022, regarding the relief requested in this Motion.  Counsel for Plaintiff opposes the relief requested herein.

Dated:  December 23, 2022

Respectfully submitted,

*/s/ Markham R. Leventhal*
Markham R. Leventhal (FBN 616140)
mleventhal@carltonfields.com
Jason H. Gould (*pro hac vice*)
jgould@carltonfields.com
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone:  (202) 965-8100
Facsimile:  (202) 965-8104

Allison O. Kahn (FBN 496138)
akahn@carltonfields.com
CARLTON FIELDS, P.A.
CityPlace Tower, Suite 1200
525 Okeechobee Boulevard
West Palm Beach, Florida 33401-6350
Telephone:  (561) 659-7070
Facsimile:  (561) 659-7368

Irma Reboso Solares (FBN 797073)
isolares@carltonfields.com
Sean W. Hughes (FBN 1038714)
shughes@carltonfields.com
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

*Attorneys for Defendant Embry-Riddle*
*Aeronautical University, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of December, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which in turn automatically generated a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system, including the following:

Brandon J. Hill, Esq.
Luis A. Cabassa, P.A., Esq.
Amanda E. Heystek, Esq.
WENZEL FENTON CABASSA, P.A.
Suite 300
1110 North Florida Avenue
Tampa, Florida 33602
Telephone:  (813) 670-8349
Facsimile:  (813) 229-8712
bhill@wfclaw.com
lcabassa@wfclaw.com
gnichols@wfclaw.com

*Attorneys for Plaintiff*

_/s/ Markham R. Leventhal_

131348719