## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**GUILLERMINA LOPEZ,**

        **Plaintiff,**

**v.**                                          **Case No: 6:22-cv-1580-PGB-LHP**

**EMBRY-RIDDLE**
**AERONAUTICAL UNIVERSITY,**
**INC.,**

        **Defendant.**

_____/

## ORDER

This cause is before the Court on Plaintiff Guillermina Lopez's ("**Lopez**") Motion for Class Certification. (Doc. 43 (the "**Motion**")). Defendant Embry-Riddle Aeronautical University, Inc. ("**Embry**") submitted a Response in Opposition (Doc. 53), and the Plaintiff filed a Reply. (Doc. 54 (the "**Reply Brief**")). Upon due consideration, Plaintiff Lopez's Motion is denied.

## I.     BACKGROUND

Defendant Embry offers a retirement plan (the "**Plan**") to its employees where eligible faculty and staff may elect to participate in the Plan. (Doc. 1, ¶ 1). Plaintiff Lopez sued in her capacity as a member of the Plan and as a class representative. (*Id.*). Lopez alleges that Embry breached its fiduciary duty by paying excessive recordkeeping fees and expenses charged against participants' investments and affecting all Plan participants in the same way. (*Id.* ¶¶ 7, 23, 90).

Lopez further claims the Plan participants were harmed, because the investment options underperformed many prudent alternatives available to the Plan, resulting in a loss of retirement savings. (*Id.* ¶¶ 25, 66–70).

Lopez argues Defendant Embry should have negotiated with the Teachers Insurance and Annuity Association of America ("**TIAA**") for an annual recordkeeping cost assessed per participant at a rate of $25 to $30. (Doc. 43, pp. 6–7).[1] Lopez claims that from 2015 through 2020, Embry allowed TIAA to charge each Plan participant between $62.46 and $81.48 per year in direct recordkeeping costs. (*Id.* at p. 7). She also contends that TIAA's direct and indirect compensation was at least $160 per participant annually. (*Id.* at p. 10). Defendant Embry objects to certification of the class for four reasons: Lopez lacks standing, her claims are antagonistic to and in conflict with the interests of most other putative class members, her claims are not typical, and Lopez lacks adequate knowledge to represent the class. (Doc. 53, pp. 10–18). Defendant Embry also contends that mandatory class certification under Rule 23(b)(1) of the Federal Rules of Civil Procedure is inappropriate and, if certified, class members should be permitted to opt out of the class action. (*Id.* at p. 19).

## II.   STANDARD OF REVIEW

To certify a class action, the moving party must satisfy several prerequisites. First, the named plaintiff must demonstrate standing. *Vega v. T-Mobile USA, Inc.*,

---

[1]   (*See also* Doc. 1, ¶ 97).

564 F.3d 1256, 1265 (11th Cir. 2009). Second, the putative class must meet all four requirements set forth in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). Third, the putative class must fit into at least one of the three class types defined by Rule 23(b). FED. R. CIV. P. 23(b). The party moving to certify any class bears the burden of proving that all prerequisites are met. *See Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233–34 (11th Cir. 2016).

Class certification is not automatic, and the court must conduct a rigorous analysis of the propriety of class certification. *In re HealthSouth Corp. Secs. Litig.*, 257 F.R.D. 260, 271 (N.D. Ala. 2009). The court's inquiry may include "a possible 'probe behind the pleadings before coming to rest on the certification question.'" *Id.* (internal citation and quotation marks omitted). Thus, the Court should consider the merits of the case as necessary to determine whether the Plaintiff has met the requirements of Rule 23. *Id.* That said, the Court should avoid turning the class-certification proceeding into a trial on the merits. *Id.* at 271–272.

## III.   DISCUSSION

### A.   Standing

"A plaintiff's standing to bring and maintain her lawsuit is a fundamental component of a federal court's subject matter jurisdiction." *Huang v. TriNet HR III, Inc.*, No. 8:20-cv-2293-VMC-TGW, 2022 WL 13631836, at *3 (M.D. Fla. Oct. 21, 2022) (quoting *Baez v. LTD Fin. Servs., L.P.*, No. 6:15-cv-1043-PGB-DCI, 2016 WL 3189133, at *2 (M.D. Fla. June 8, 2016))[2]. To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at *3. And an injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (citation omitted).

Plaintiff Lopez asserts in her motion for class certification that TIAA charged excessive recordkeeping fees to the Plan's participants. (Doc. 43, p. 7). Lopez cites her Complaint as evidence that TIAA was paid "nearly double the amount of reasonable compensation." (*Id.*). Similarly, Lopez claims without citing an evidentiary basis that TIAA was paid millions in excessive indirect compensation.[3]

---

[2]    Plaintiff Lopez urges the Court to follow Judge Covington's reasoning in *Huang* even though Judge Covington held a potential ERISA class representative must establish his individual standing before he can represent putative class members of other plans to which he does not belong. (Doc. 43, pp. 4–5); *Huang*, 2022 WL 1363186, at *4.

[3]    Plaintiff Lopez does cite a declaration by her attorney, Michael McKay ("**Mr. McKay**"), for the proposition that TIAA received millions of dollars in indirect compensation. (Doc. 43, p. 9 (citing Doc. 43-1 (the "**McKay Declaration**")). However, Lopez's reliance on the McKay Declaration is misplaced. At best, Mr. McKay states in the McKay Declaration that Embry's 2017 through 2021 Annual Form 5500 Department of Labor Disclosures "contain[] no

(*Id.* at p. 8). And Lopez's assertion that TIAA's direct and indirect compensation was at least $160 per participant annually is supported only by reference to her Complaint. (*Id.* at p. 10).

In response to Lopez's claim that excessive recordkeeping fees were charged by TIAA, Defendant Embry offers the declaration of Mr. Brandon Young ("**Mr. Young**"), the Vice-President and Chief Human Resources Officer of Embry-Riddle Aeronautical University. (Doc. 53-1). Mr. Young attests that the Plaintiff's summary of direct annual recordkeeping fees charged per participant between 2015 and 2020 as stated in her Complaint is false. (*Id.* ¶ 29). First, Mr. Young notes that, contrary to Lopez's assertion, the Variable Annuity Life Insurance Company ("**VALIC**") was never a recordkeeper for the Plan and never received compensation, and, secondly, the Plan does not pay recordkeeping fees on a "per-participant" basis and instead prefers an asset-based recordkeeping fee. (*Id.* ¶¶ 30–31). Defendant Embry also offers the expert report of Dr. Steven Grenadier ("**Dr. Grenadier**"), who calculates that "Ms. Lopez paid no more than $18 in recordkeeping fees each year during the Proposed Class Period."[4] (Doc. 53-2, p. 4). As a result, Ms. Lopez was not economically harmed by the Plan's asset-based fee

---

information about indirect compensation the Plan's recordkeeper receives via float," except for the 2018 Form, which included service code 62, indicating TIAA receives compensation via float. (*Id.* ¶¶ 12-17).

[4] Dr. Grenadier also concludes that based on his review of the data "the majority of the Proposed Class members were economically better off under the Plan's asset-based recordkeeping fee arrangement . . . relative to a proposed flat $30 per-participant fee." (Doc. 53-2, p. 19). This is because "Plan participants with lower balances generally paid less recordkeeping fees under the asset-based arrangement (while others with higher balances generally paid more recordkeeping fees)." (*Id.*).

arrangement. (*Id.* at pp. 4–5). Moreover, Lopez only invested in the Plan's Vanguard Target Retirement Date Fund and never invested in any of the challenged actively managed funds. (Doc. 53-1, ¶ 33; Doc. 53-2, p. 6). Since Lopez never invested in the challenged funds, she was not harmed by the alleged imprudent investment decisions relating to the actively managed funds.

Two points are worth noting here. First, Plaintiff Lopez fails to articulate in her Motion any injury in fact that she sustained. And second, Lopez ignores the testimony of Mr. Young and Dr. Grenadier in her Reply Brief. (*See* Doc. 54). The Plaintiff argues, even if unconvincingly, that in the absence of an individual injury, she still has standing to represent a class to which she does not belong simply because she is "only seeking equitable remedies on behalf of the entire Plan." (*Id.* at p. 7). A close reading of *Huang* reveals why the Plaintiff is wrong. *See* 2022 WL 13631836, at *2, *4.

Two retirement plans were at issue in *Huang*: TriNet 401(k) ("**TriNet III**") and TriNet Select 401(k) ("**TriNet IV**"). *Id.* at *2. As here, the plaintiffs sued the defendants for breaching their fiduciary duties by failing to ensure each investment option was prudent and failing to control the plans' recordkeeping fees. *See id.* The defendants argued that no plaintiff had standing to pursue claims related to TriNet III, because only plaintiff Patterson invested in that plan, but she did not invest in one of the funds challenged by the plaintiffs. *Id.* at *4. Additionally, Ms. Patterson paid lower annual recordkeeping fees than her expert considered reasonable. *Id.* And so, Judge Virginia M. Hernandez Covington ("**Judge Covington**") found

that "Ms. Patterson has not demonstrated an injury in fact, and, therefore, lacks standing." *Id.* Judge Covington dismissed plaintiffs' claims as to Ms. Patterson and held she would not be appointed as a representative for the class. *Id.*

Fortunately for the plaintiffs, several potential class representatives were named as plaintiffs in *Huang*. *Id.* The court found the TriNet IV plaintiffs had standing to pursue their claims related to both the TriNet III and TriNet IV plans. *Id.* Judge Covington rejected the defendants' argument that TriNet IV plaintiffs lacked standing to pursue claims on behalf of members invested in TriNet III's challenged funds. *Id.* Judge Covington correctly ruled that the defendants were confusing constitutional standing (case or controversy) with the Rule 23(a) typicality requirement. *Id.* That is, "once a potential ERISA class representative establishes his *individual standing* to sue his own ERISA governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong." *Id.* (emphasis added) (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998). This assumes, of course, that the claims asserted by the plaintiff with standing are typical of the claims asserted by the members of the other plans.

Here, Plaintiff Lopez lacks individual standing, so she may not pursue claims on her behalf much less on behalf of a Plan to which she never belonged. To rule otherwise would allow any disinterested party to serve as a class representative

under cover of pursuing equitable relief for the Plan.[5] Accordingly, Lopez lacks standing to bring claims on behalf of the putative class, and she may not serve as a class representative.

### B.    Plaintiff Lopez's Claims are Antagonistic

Even though the matter of class certification is resolved against the Plaintiff based on her lack of standing, the Court will address a separate basis for finding class certification to be inappropriate. Lopez alleges the Defendant "should have been able to negotiate a recordkeeping cost with TIAA anywhere from $25 *per participant* to $30 from the beginning of the Class Period to the present." (Doc. 43, p. 7 (emphasis added) (quoting Doc. 1, ¶ 97)). As discussed above, Embry, acting via the Committee, rejected the "per-participant" basis for assessing recordkeeping fees and opted for an "asset-based" approach. (Doc. 53-1, ¶ 31). Dr. Grenadier notes that since participants with smaller account balances pay annual recordkeeping fees below Plaintiff's proposed rate of $25 to $30, "members of the Proposed Class have a conflicting economic interest with other members of the Proposed Class who paid more than $25–$30 per year under the asset-based fee arrangement used by the Plan." (Doc. 53-2, pp. 4, 16–20). On this basis alone, class certification is improper.

And finally, as Dr. Grenadier explains in detail in his expert report, "Ms. Lopez's claim about actively managed funds and the economic harm they caused

---

[5]   The deadline for adding parties is governed by the Case Management and Scheduling Order. The deadline to add parties or amend pleadings in the instant case expired nearly one year ago, on March 6, 2023. (Doc. 32).

cannot be assessed on a collective (class-wide) basis." (Doc. 53-2, p. 5). This is because "the performances of the Plan's actively managed funds during the Proposed Class Period varied between funds and over time but generally compared favorably to their benchmarks identified in disclosures to Plan participants." (*Id.*). As such, the Plaintiff's generalized claim that better performing funds may have been available "fail[s] to consider the individualized nature of investments in 'frozen' individual annuity contracts." (*Id.* at pp. 6, 20–33). This is because, one must consider "1) the specific funds being compared; 2) the time horizon over which the comparison is being made; and 3) aggregate market and economic conditions at the time of comparison." (*Id.* at p. 22). Simply put, common questions of fact do not predominate when considering the selection of investment funds and their performance here.[6] The Court sees no need to address the balance of the reasons why class certification is improper.

## IV. CONCLUSION

For these reasons, the Plaintiff's Motion for Class Certification (Doc. 43) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on February 26, 2024.

---

[6] For these reasons, a mandatory class under Rule 23(b)(1) of the Federal Rules of Civil Procedure would be a disservice to Plan participants who have benefited under the current regime.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties