# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

## CASE NO. 6:22-CV-01580-PGB-LHP

GUILLERMINA LOPEZ,

      Plaintiff,

v.

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, INC.,

      Defendant.

---

## DEFENDANT EMBRY-RIDDLE AERONAUTICAL UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

---

Allison O. Kahn
CARLTON FIELDS, P.A.
CityPlace Tower, Suite 1200
525 Okeechobee Boulevard
West Palm Beach, Florida 33401
Telephone: (561) 659-7070

Markham R. Leventhal
Jason H. Gould
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone: (202) 965-8100

Irma Reboso Solares
Sean W. Hughes
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136
Telephone: (305) 530-0050

*Attorneys for Defendant Embry-Riddle Aeronautical University, Inc.*

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ............................................................................ 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................... 2

    A.    The University's Management of the Plan ........................................... 2

    B.    The Plan's Investment Options ......................................................... 8

    C.    Plaintiff's Participation in the Plan .................................................... 8

LEGAL STANDARD .......................................................................... 9

ARGUMENT .................................................................................. 10

I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT TO THE UNIVERSITY BECAUSE PLAINTIFF LACKS ARTICLE III STANDING ............................................................................. 11

    A.    Plaintiff Cannot Show An Injury-In-Fact Traceable To Any Alleged Breach Of Fiduciary Duty .................................................... 11

    B.    Plaintiff Cannot Show A Judicial Decision Would Redress Her Supposed Injuries .......................................................................... 16

II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT TO ERAU ON THE MERITS OF PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS ................................................................... 17

    A.    Plaintiff Has No Evidence That ERAU Failed To Monitor Her Vanguard Target Date Retirement Fund Or That A Lower-Cost Share Class Was Available .................................................................. 18

    B.    Summary Judgment Should Be Granted On Plaintiff's Claim That ERAU Breached A Fiduciary Duty By Failing To Prudently Monitor Recordkeeping Fees ............................................................ 20

    C.    Plaintiff Has No Evidence Of Damages Caused By ERAU ............... 21

# **TABLE OF CONTENTS**
(continued)

*Page*

CONCLUSION ................................................................................... 21

CERTIFICATE OF SERVICE ............................................................. 23

# TABLE OF AUTHORITIES

*Page*

## Cases

A&M Gerber Chiropractic LLC v. GEICO General Insurance Co.,
  925 F.3d 1205 (11th Cir. 2019) ................................................................. 15

California v. Texas,
  593 U.S. 659 (2021) ................................................................................... 16

Cunningham v. Cornell University,
  2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019) ............................................. 19

DaimlerChrysler Corp. v. Cuno,
  547 U.S. 332 (2006) ................................................................................... 11

Dapeer v. Neutrogena Corp.,
  95 F. Supp. 3d 1366 (S.D. Fla. 2015) ......................................................... 13

Furcron v. Mail Centers Plus, LLC,
  843 F.3d 1295 (11th Cir. 2016) ................................................................. 10

Gagliardi v. TJCV Land Trust,
  889 F.3d 728 (11th Cir. 2018) ................................................................... 11

Garcia-Bengochea v. Carnival Corp.,
  57 F.4th 916 (11th Cir. 2023) ................................................................... 16

Glynn Environmental Coalition, Inc. v. Sea Island Acquisition, LLC,
  26 F.4th 1235 (11th Cir. 2022) ................................................................. 16

Huang v. TriNet HR III, Inc.,
  2023 WL 3092626 (M.D. Fla. Apr. 26, 2023) ....................................... 10, 17

Johnson v. Delta Air Lines, Inc.,
  2017 WL 10378320 (N.D. Ga. Dec. 12, 2017) ............................................. 14

Keister v. Bell,
  29 F.4th 1239 (11th Cir. 2022) ................................................................. 11

Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992) ................................................................................... 10

## TABLE OF AUTHORITIES
(continued)

*Page*

*Nunez v. B. Braun Medical, Inc.*,
　　2023 WL 5339620 (E.D. Pa. Aug. 18, 2023) ................................................ 17

*Ohio State Troopers Ass'n v. Point Blank Enterprises, Inc.*,
　　347 F. Supp. 3d 1207 (S.D. Fla. 2018) ........................................................ 13

*Spokeo, Inc. v. Robins*,
　　578 U.S. 330 (2016) ................................................................................ 11, 12

*Steel Co. v. Citizens for a Better Environment*,
　　523 U.S. 83 (1998) ........................................................................................ 11

*Thole v. U.S. Bank N.A.*,
　　140 S. Ct. 1615 (2020) ............................................................................. 12, 15

*TransUnion LLC v. Ramirez*,
　　594 U.S. 413 (2021) ................................................................................ 11, 15

*Trichell v. Midland Credit Management, Inc.*,
　　964 F.3d 990 (11th Cir. 2020) ..................................................................... 11

*Walters v. Fast AC, LLC*,
　　60 F.4th 642 (11th Cir. 2023) ................................................................. 10, 12

*Wilding v. DNC Services Corp.*,
　　941 F.3d 1116 (11th Cir. 2019) ................................................................... 11

*Willett v. Blue Cross & Blue Shield of Alabama*,
　　953 F.2d 1335 (11th Cir. 1992) ............................................................. 18, 21

## Rules

Federal Rule of Civil Procedure 56 ..................................................... 1, 10, 20, 21

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Defendant Embry-Riddle Aeronautical University, Inc. ("ERAU" or the "University") hereby moves for final summary judgment on all of Plaintiff's claims in this action.

## INTRODUCTION

In its order denying class certification, this Court correctly held that the Plaintiff Guillermina Lopez cannot represent a proposed class because she "lacks individual standing" to bring her ERISA claims. Order (Doc. 43), at 7. Similarly, in its recent order denying Plaintiff's motion to amend the Complaint, the Court held that Lopez "lack[ed] the standing necessary to amend." Order (Doc. 87), at 5–6. As the Court explained, "a plaintiff who lacks Article III standing in a case also lacks the standing required to amend the complaint." *Id.* at 3. In fact, Plaintiff's motion "appear[ed] to concede her lack of standing." *Id.* at 6.

Because there is no genuine issue of material fact with respect to Plaintiff's lack of injury and lack of standing, the Court should enter summary judgment in favor of ERAU. The undisputed facts demonstrate that Plaintiff cannot show any harm suffered from the purported breach of fiduciary duties alleged in the Complaint. Nor would winning this case redress any of Plaintiff's alleged injuries. To the contrary, the relief she demands would leave her worse off. Because Plaintiff has no standing, the Court lacks subject matter jurisdiction to proceed with the action. Moreover, the undisputed facts demonstrate that ERAU committed no breach of fiduciary duty that harmed the Plaintiff in any way. Accordingly, summary judgment is appropriate, and this action should be dismissed with prejudice.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.   The University's Management of the Plan

ERAU maintains a retirement plan for its faculty and employees pursuant to Section 403(b) of the Internal Revenue Code (the "Plan").  Joint Stip. ¶ 1.[1]  The Plan is subject to the Employee Retirement Income Security Act of 1974 ("ERISA").  *Id.*; Declaration of Brandon Young ¶ 3 (Doc. 53-1) ("Young Decl.") (Ex. 1).[2]  New University employees receive an employee benefits brochure that provides an overview of benefits available to employees, including health insurance benefits and a brief description of the 403(b) Plan.  Joint Stip. ¶ 2.  The brochure explains that employees and faculty working at least 20 hours per week who choose to participate in the Plan will receive a contribution or "gift" from ERAU equal to 6% of the employee's regular base pay, and if they choose to contribute, an additional contribution "match" of up to 4.0% (previously 3.5%) of the employee's compensation.  Joint Stip. ¶ 2; Young Decl. (Ex. 1) ¶ 4.

ERAU has a Retirement Plan Committee that oversees and manages the Plan.  Joint Stip. ¶ 6; Young Decl. (Ex. 1) ¶ 7.  Senior executives of the University serve on the Committee, including ERAU's Chief Human Resources Officer, Chief Financial

---

[1] In accordance with this Court's Case Management and Scheduling Order (Doc. 68, at 8), ERAU has separately filed a Joint Stipulation of Agreed Material Facts (Doc. 88) (cited as "Joint Stip.").  Other undisputed material facts to which Plaintiff would not agree are supported by citations to record evidence.

[2] For the Court's convenience, a copy of the previously filed Young Declaration is attached hereto as Ex. 1.

Officer, General Counsel, Director of Human Resources Operations, Controller, and the Executive Director of Budget and Finance.  Joint Stip. ¶ 6; Young Decl. (Ex. 1) ¶ 7.  Brandon Young, ERAU's Vice President and Chief Human Resources Officer, has served as Committee Chair for approximately ten years.  Joint Stip. ¶ 6.  Several Committee members served on the retirement plan committees at other universities or companies before coming to ERAU.[3]

Since 2016 through the present, the Committee has met at least quarterly to monitor and review the Plan's various investment options, the Plan's expenses, and to fulfill its fiduciary duties to manage the Plan in the best interests of the Plan's participants.  Young Decl. (Ex. 1) ¶ 9; Deposition of Brandon Young at 17–18 (Ex. 5) ("Young Dep. Tr."); Allocco Dep. Tr. (Ex. 2) at 40.  The Committee takes its fiduciary responsibilities very seriously and monitors the performance of *all* investment options offered in the Plan.  Young Decl. (Ex. 1) ¶ 8.  The Committee also keeps minutes of its quarterly meetings, all of which (for the relevant period) were produced during discovery in this action.[4]

---

[3] For example, Jare Allocco, the University Controller, served on the retirement plan committees for Loyola University-Maryland and the Rochester Institute of Technology before joining ERAU.  Deposition of Jare Allocco Allen at 8 (Ex. 2) ("Allocco Dep. Tr.").  Melissa Peters, the Executive Director for Finance and Budget, served on the 401(k) plan committee for The Root Company for seven years.  Deposition of Melissa Peters at 12 (Ex. 3) ("Peters Dep. Tr.").  Dr. Randy Howard, the University's CFO, served on the retirement plan committee for Ball State University.  Deposition of Dr. Randy Howard at 12 (Ex. 4) ("Howard Dep. Tr.").

[4] Young Decl. (Ex. 1) ¶ 28; *see, e.g.*, Ex. 6 (Q3 2016 Committee meeting minutes) (ERAU_004160–62); Ex. 7 (ERAU_000204–206) (Q1 2019 meeting minutes); Ex. 8 (Q4 2022 Committee meeting minutes) (ERAU_002664–66).  All documents attached

Since 2011, the Committee has used CapTrust Financial Advisors as the Committee's professional retirement plan and investment advisor.  Joint Stip. ¶ 7; Young Decl. (Ex. 1) ¶ 10.  CapTrust is an investment advisor firm registered under the Investment Advisers Act of 1940 that provides advisory services to institutional clients including retirement plan sponsors, 401(k) plans, and 403(b) plans, among others.  As of December 31, 2022, CapTrust's total assets under advisement was approximately $714.6 billion.[5]

Among other services, CapTrust assists the Committee in developing the Plan's Investment Policy Statement; assists with selecting and monitoring the Plan's investment options, including the Plan's Qualified Default Investment Alternative ("QDIA"); and assists with selecting and managing the Plan's third-party service providers, including providing periodic benchmarking of fees and services.  Young Decl. (Ex. 1) ¶ 11(a)-(d); Gissiner Rep. (Doc. 85-9) ¶ 66.  Though CapTrust acts as a fiduciary in providing services for the benefit of the Plan, the Committee has not delegated its fiduciary duties to CapTrust.  Young Decl. (Ex. 1) ¶ 12.  Rather, the Committee retains and exercises final decision-making authority for the Plan.  Young Decl. (Ex. 1) ¶ 12; Peters Dep. Tr. (Ex. 3) at 30, 41–42.

CapTrust prepares an annual fiduciary calendar for the Committee that

---

to this motion with Bates-stamped numbering were produced in discovery.  Plaintiff has not challenged the authenticity of any such documents.

[5] *See* Expert Report of Steven K. Gissiner ¶¶ 65–66 ("Gissiner Rep.") (Doc. 85-9).

identifies the quarterly meetings at which the Committee will review and consider certain key fiduciary issues, such as reviewing Plan investments, evaluating the Plan's investment policy, reviewing service providers, and reviewing QDIA options. Young Decl. (Ex. 1) ¶ 13; Allocco Dep. Tr. (Ex. 2) at 32; *see, e.g.*, Ex. 9 (2018 fiduciary calendar) (ERAU_000234); Ex. 10 (2021 fiduciary calendar) (ERAU_000236).

CapTrust attends every quarterly Committee meeting, and before each meeting, prepares and circulates a comprehensive meeting package of information that includes an agenda and documents for review and discussion. Young Decl. (Ex. 1) ¶ 25; Peters Dep. Tr. (Ex. 3) at 27; *see, e.g.*, Ex. 11 (Q2 2019 meeting materials) (ERAU_002443–521). Among other things, each Committee meeting includes an "Investment Review" report from CapTrust and discussion of investment options and whether certain funds should be placed on a "watch list" for more frequent review and discussion, and whether any action should be taken with respect to the fund options placed on the watch list. Young Decl. (Ex. 1) ¶¶ 15, 26; Young Dep. Tr. (Ex. 5) at 92, 119; Peters Dep. Tr. (Ex. 3) at 34, 59–60. CapTrust provides share class analyses for the Committee's review,[6] as well as benchmarks and analysis of the performance of the Plan's investments against that of appropriate investment alternatives. Young Decl. (Ex. 1) ¶ 15; *see, e.g.*, Ex. 12 (Q2 2020 materials titled "Defined Contribution Quarterly Review") (ERAU_000819–901).

The Committee also considers, reviews, and discusses updates in the economic

---

[6] Young Decl. (Ex. 1) ¶ 15; Allocco Dep. Tr. (Ex. 2) at 37.

and financial markets, regulatory developments, litigation impacting retirement plans, and other topics that could affect the Plan or its participants. Young Decl. (Ex. 1) ¶ 27; Young Dep. Tr. (Ex. 5) at 62–63, 67, 110. On average, each Committee meeting lasts between 1.5 and 2 hours, not including preparation and review of materials outside the meeting itself. Young Decl. (Ex. 1) ¶ 28. CapTrust prepares and the Committee reviews and approves minutes of each meeting.

Teachers Insurance and Annuity Association of America ("TIAA") has been the Plan's sole recordkeeper since 2014. Joint Stip. ¶ 8. The Committee monitors TIAA's performance as a recordkeeper, the quality of its services, and the fees that TIAA charges. *See, e.g.*, Ex. 13 (Q4 2021 materials titled "Annual Fee Benchmarking") (ERAU_001862–71); Ex. 14 (Q4 2021 meeting minutes) (ERAU_002542–2544). In fact, the Committee reviews TIAA's fees for reasonableness at least annually and has done so since before 2016. Young Decl. (Ex. 1) ¶ 16; Young Dep. Tr. (Ex. 5) at 62.

TIAA regularly provides the Committee disclosures about its compensation, including all fees and expenses incurred by the Plan. Young Decl. (Ex. 1) ¶ 16; Howard Dep. Tr. (Ex. 4) at 43–44, 46; Peters Dep. Tr. (Ex. 3) at 35–36; *e.g.*, Ex. 15 (2018 "Summary of Fees and Compensation for Your Plan") (ERAU_006194); Ex. 16 (2021 "Summary of Fees and Compensation for Your Plan") (ERAU_009397). The Committee reviews its agreement with TIAA each year and negotiates amendments as needed. Young Decl. (Ex. 1) ¶ 20.

CapTrust provides regular benchmarking of TIAA's services and recordkeeping

fees to assist the Committee in evaluating the recordkeeping fees for reasonableness. Young Decl. (Ex. 1) ¶ 17; Young Dep. Tr. (Ex. 5) at 67–68; Howard Dep. Tr. (Ex. 4) at 16–19; *see, e.g.*, Ex. 17 (Value and Fee Benchmarking Report dated Aug. 14, 2020) (ERAU_000684–715).  "[T]he Committee's process for monitoring and evaluating the Plan's recordkeeping fees and services was rigorous and consistent with the practices of similarly situated defined contribution plan committees and resulted in meaningful fee reductions during the Relevant Period."  Gissiner Rep. (Doc. 85-9) ¶ 79; *see also id*. ¶¶ 80–82 (detailing ERAU's process for evaluating recordkeeping fees).  Since 2016, the TIAA Agreement has been amended several times, resulting in a continuing reduction of recordkeeping fees from 0.13% (13 bps) to 0.11% (11 bps) and most recently to 0.078% (7.8 bps).  Young Decl. (Ex. 1) ¶ 21; Young Dep. Tr. (Ex. 5) at 24–25, 59, 68–73, 79, 82.

The Plan does not pay TIAA recordkeeping fees on a per-participant (or flat-fee) basis.  Young Decl. (Ex. 1) ¶ 31.  Instead, the Plan uses an asset-based method for paying recordkeeping fees.   Joint Stip. ¶ 9.  Paying recordkeeping fees on a per-participant basis would mean that each Plan participant would pay the same amount for recordkeeping services regardless of the size of their account balance.  Young Decl. (Ex. 1) ¶ 31.  The Committee considered and rejected this approach because it tends to disproportionately burden lower-income Plan participants and those with lower account balances.  Young Decl. (Ex. 1) ¶ 31.  Rather, the Committee decided that an asset-based method for paying recordkeeping fees is fairer and more equitable to Plan participants.  Young Decl. (Ex. 1) ¶ 31.

**B.     The Plan's Investment Options**

The Plan offers a variety of investment options for Plan participants with different asset classes, expense ratios, and risk profiles.  *See* Joint Stip. ¶ 3; TIAA, *Your Full List of Investments*, https://www.tiaa.org/public/tcm/erau/view-all-investments (Doc. 23-4).  Plan participants may select the options in which they wish to invest their retirement account.  Joint Stip. ¶ 4.  There are over 40 investment options available to Plan participants including a broad menu of actively and passively managed equity funds, balanced funds, fixed-income funds, annuities, and other types of specialty funds.  Gissiner Rep. (Doc. 85-9) ¶ 58 & Exs. 2A, 2B; Doc. 23-4 (list of investment options).  For example, available mutual funds include Delaware, Dodge & Cox, Harbor, JPMorgan, Loomis Sayles, Metropolitan West, MFS, PIMCO, T. Rowe Price, TIAA-CREF, Vanguard, and WCM funds.  *See* Doc. 23-4 (list of investment options).

At the end of 2022, the ERAU Plan had approximately 5,409 participants and approximately $495,777,786 in assets across all investment options.  Joint Stip. ¶ 5.  At the end of 2023, the Plan had approximately 5,562 participants and $575,180,244 in assets across all investment options, including legacy funds.  Joint Stip. ¶ 5.

**C.     Plaintiff's Participation in the Plan**

In July 2019, ERAU hired Plaintiff Lopez as a registered nurse on its Daytona Beach campus.  Joint Stip. ¶ 10.  Plaintiff enrolled in the Plan in November 2019.  Young Decl. (Ex. 1) ¶ 33; Deposition of Guillermina Lopez (Doc. 53-3) at 32–33 ("Lopez Dep. Tr.").  Because Plaintiff failed to select a specific investment option, her

contributions were placed in the QDIA corresponding with her age and projected retirement date, which was the Vanguard Target Date Retirement 2035 fund. Joint Stip. ¶ 10. In fact, Plaintiff never looked at or investigated the options available to her under the Plan. Lopez Dep. Tr. (Doc. 53-3) at 54, 84.

The Target Date Retirement 2035 fund is a Vanguard fund; it is not a TIAA fund. *See* Joint Stip. ¶ 10. Although nothing prevented Plaintiff from selecting other Plan investment options, she made no changes to her investment at any time during her employment. Accordingly, the Target Date Retirement 2035 fund is the only Plan investment option in which Plaintiff has ever invested. Joint Stip. ¶¶ 10, 12; Young Decl. (Ex. 1) ¶¶ 35–36.

Plaintiff terminated her employment at ERAU in September 2023. Joint Stip. ¶ 12; Young Decl. (Ex. 1) ¶ 37. As a former employee, she can continue as a Plan participant, but ERAU's 4% matching contribution and 6% gift ceased as of her separation date. Joint Stip. ¶ 13. Plaintiff paid $0.76 in annual recordkeeping fees in 2019, $6.78 in 2020, $14.04 in 2021, and $18.00 in 2022.[7] As of June 2023, Plaintiff had $34,366.97 invested in her Vanguard Target Retirement 2035 fund account. Lopez Dep. Tr. (Doc. 53-3) at 57.

## LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any

---

[7] Expert Report of Steven Grenadier, Ph.D. (Doc. 53-2) ¶ 20 & Ex. 7 ("Grenadier Rep.").

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that can affect a claim's outcome; a genuine dispute exists only if a reasonable factfinder could find for the nonmoving party. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016). To defeat summary judgment, Plaintiff must point to "particular parts of materials in the record" and cannot merely recite conclusory allegations. Fed. R. Civ. P. 56(c)(1)(A); *Huang v. TriNet HR III, Inc.*, 2023 WL 3092626, at *4 (M.D. Fla. Apr. 26, 2023).

For standing issues, "[t]he party invoking federal jurisdiction bears the burden of proving each of the[] standing elements 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Walters v. Fast AC, LLC*, 60 F.4th 642, 647 (11th Cir. 2023) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Thus, 'in response to a summary judgment motion, 'the plaintiff … must set forth by affidavit or other evidence specific facts' showing [s]he was injured, by the defendant's legal violation, in a manner amenable to judicial relief." *Walters*, 60 F.4th at 647 (citation omitted).

## ARGUMENT

The Court has already concluded that Plaintiff "lacks individual standing." Order (Doc. 78), at 7. As discussed below, that determination was correct, and there is no genuine dispute of material fact that could sustain Plaintiff's claims. Because Plaintiff lacks Article III standing, the Court should grant summary judgment to ERAU. In addition, because there is no genuine dispute that ERAU did not breach any fiduciary duty that harmed Plaintiff in any way, the Court should grant summary

judgment to ERAU on the merits as well.

## I. THE COURT SHOULD GRANT SUMMARY JUDGMENT TO THE UNIVERSITY BECAUSE PLAINTIFF LACKS ARTICLE III STANDING

The Constitution's Article III limits federal jurisdiction to "cases" and "controversies."  *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124–25 (11th Cir. 2019). This keeps federal courts from "issuing advisory opinions that do not 'affect the rights of litigants in the case before'" them.  *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018).  If a plaintiff lacks Article III standing, the court lacks subject matter jurisdiction to adjudicate the plaintiff's claims.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109–10 (1998).  A plaintiff is therefore required to "demonstrate standing for each claim [s]he seeks to press."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

To prove Article III standing here, Plaintiff would need to demonstrate:  (1) "an injury in fact that is concrete, particularized, and actual or imminent"; (2) ERAU "likely caused" the injury; and (3) "judicial relief would likely redress" it.  *Keister v. Bell*, 29 F.4th 1239, 1256 (11th Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).  Plaintiff fails all three requirements.

### A. Plaintiff Cannot Show An Injury-In-Fact Traceable To Any Alleged Breach Of Fiduciary Duty

First, Plaintiff must show injury:  "'an invasion of a legally protected interest' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020).  "A concrete injury must be de facto; that is, it must actually exist."  *Spokeo, Inc.*

*v. Robins*, 578 U.S. 330, 340 (2016) (internal quotations omitted).  The term "concrete" is intended to "convey the usual meaning of the term—'real,' and not 'abstract.'"  *Id.* (quoting Webster's Third New International Dictionary 472 (1971)).  A concrete injury must also be particularized, meaning "it affect[s] the plaintiff in a personal and individual way."  *Walters*, 60 F.4th at 648.  And "[t]here is no ERISA exception to Article III," *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020)—meaning Plaintiff has standing to assert ERISA claims *only* if she seeks redress for injuries she herself suffered; she lacks Article III standing to assert alleged injuries that may or may not have affected others or the Plan as a whole.  *See id.* at 1619–22.

Here, Plaintiff alleges two theories of liability—that ERAU failed to prudently monitor certain investment options and replace them with better alternatives, and that ERAU failed to prudently monitor TIAA as the Plan recordkeeper and therefore paid excessive recordkeeping fees to TIAA.  Plaintiff, however, has no evidence showing that she suffered a concrete, particularized, actual, or imminent injury under either theory.  With respect to investment options, Plaintiff submitted an expert report asserting that the Committee did not monitor and should have moved certain CREF, MFS Mid Cap Value, T. Rowe Blue Chip Growth, MFS International New Discovery, JPMorgan Mid Cap Growth, and Victory RS Select Growth funds to share classes with lower costs.[8]  Plaintiff Lopez, however, never invested in any of those funds.  Instead, having failed to select any investment option when she enrolled in the

---

[8] Expert Report of Steve Pomerantz (Doc. 83-1) at 4 ¶ a.ii ("Pomerantz Rep.").

Plan, Plaintiff's investment was automatically placed in the QDIA that corresponded with her age and projected retirement date—the Vanguard Target Date Retirement 2035 fund.  Joint Stip. ¶ 10.  Neither her Complaint nor her expert reports have any issues with the Vanguard Target Retirement 2035 fund; none even mention it (or Plaintiff).  And "[s]ince [she] never invested in the challenged funds, she was not harmed by the alleged imprudent investment decisions relating to the actively managed funds."  Order (Doc. 78), at 6.

In other words, even assuming it were true (though it is not) that ERAU's Retirement Committee was not monitoring the share classes for the CREF, MFS Mid Cap Value, T. Rowe Blue Chip Growth, MFS International New Discovery, JPMorgan Mid Cap Growth, and Victory RS Select Growth funds, any alleged damages have no bearing on Plaintiff Lopez's case.  Plaintiff's expense ratio was based on her QDIA-only investment and she suffered no harm traceable to the Committee's monitoring or management of any funds in the Plan.

This is consistent with the normal rule in every other context, that "a party does not have standing to bring a claim for a product he or she did not purchase."  *Ohio State Troopers Ass'n v. Point Blank Enters., Inc.*, 347 F. Supp. 3d 1207, 1226 (S.D. Fla. 2018); *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) ("Plaintiff lacks Article III standing to bring claims on behalf of the Neutrogena products he did not purchase because he cannot conceivably allege any injuries from products that he never purchased or used.").  Here, Plaintiff invested in the Vanguard Target Date Retirement 2035 fund; the performance of the other available investment products has

-13-

never affected her.  *Cf. Johnson v. Delta Air Lines, Inc.*, 2017 WL 10378320, at *1 (N.D. Ga. Dec. 12, 2017) (granting 12(b)(1) motion when plaintiffs failed to show that they suffered a concrete injury by not properly alleging that they were invested in the criticized investment funds).

Nor has Plaintiff suffered any concrete injury based on her theory that ERAU did not prudently monitor the Plan recordkeeper, resulting in recordkeeping fees that allegedly exceeded a reasonable per-participant fee.  One of Plaintiff's experts (Pomerantz) asserts that per-participant recordkeeping fees of $25 or $35 would be "an appropriate record-keeping fee" and "a fair charge," respectively, for the ERAU Plan. *See* Pomerantz Rep. (Doc. 83-1) at pp. 4, 5.[9]  Even assuming these purported maximum reasonable recordkeeping fee numbers were supportable (they are not),[10]

---

[9] Plaintiff's Complaint alleged that ERAU "should have been able to negotiate a recordkeeping cost anywhere from $25 per participant to $30."  Complaint ¶ 97.

[10] As Steven Gissiner explains:

> Dr. Pomerantz's claimed "appropriate" and "fair" but-for recordkeeping fees of $25 and $35 per participant are unsupported. Dr. Pomerantz provides no support or explanation for why per-participant fees of $25 or $35 are the threshold for a reasonable recordkeeping fee, nor does he provide evidence that any similarly situated university plans paid such fees.  Moreover, neither of the other Plaintiff's Experts (Mr. Otto and Mr. Minnich) suggest that $25 or $35 per participant is the recordkeeping fee that the Plan should have paid. The speculative and arbitrary nature of Dr. Pomerantz's alternative recordkeeping fees renders his recordkeeping fee damages analysis unreliable and meaningless.

Gissiner Rep. (Doc. 85-9) ¶ 124.  Plaintiff's expert reports fail the requirements of Fed. R. Evid. 702 and would not constitute admissible evidence for purposes of summary judgment.  In any event, none of the reports even mention Plaintiff or purport to calculate her alleged individual damages.

Plaintiff cannot show any concrete harm under her recordkeeping fee theory.  As an initial matter, it is undisputed that the ERAU Plan does not charge recordkeeping fees on a per-participant or flat-fee basis.  Young Decl. (Ex. 1) ¶ 31.  The Committee rejected a flat fee approach and "decided that an asset-based method for paying recordkeeping fees is fairer and more equitable."  *Id.*  Plaintiff has no evidence that ERAU's asset-based approach to recordkeeping fees breaches a fiduciary duty.  In any event, even using Plaintiff's inapplicable flat fee approach, it is undisputed that Plaintiff paid minimal recordkeeping fees of $0.74 for 2019, $6.78 for 2020, $14.04 for 2021, and $18.00 for 2022.  Grenadier Rep. (Doc. 53-2) at Ex. 7 (PageID 1294).  As the Court previously found, Plaintiff "was not economically harmed by the Plan's asset-based fee arrangement."  Order (Doc. 78), at 5–6.

For purposes of Article III standing, Plaintiff must comply with the "irreducible minimum" of showing actual injury.  *A&M Gerber Chiropractic LLC v. GEICO Gen'l Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019).  "There is no ERISA exception to Article III."  *Thole*, 140 S. Ct. at 1622.  "Federal courts do not possess a roving commission to publicly opine on every legal question."  *TransUnion*, 594 U.S. at 423.  There is no evidence that Plaintiff's QDIA investment in the Vanguard Target Date Retirement 2035 fund was not prudently monitored or selected, and she has not produced evidence of concrete injury to her account assets stemming from any Committee mismanagement of the QDIA fund or unreasonable fees.  Plaintiff cannot show she suffered a concrete and particularized injury traceable to Committee actions, and thus, she lacks Article III standing for her ERISA claims.  The Court should grant summary

-15-

judgment on Plaintiff's claims and bring this lawsuit to a well-deserved end.

**B.    Plaintiff Cannot Show A Judicial Decision Would Redress Her Supposed Injuries**

Summary judgment is warranted for another standing-related reason: redressability.  In addition to actual injury and traceability, Plaintiff must show it is "'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 927 (11th Cir. 2023).  The Court "consider[s] the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 593 U.S. 659, 671 (2021).  "Each element of standing"—including redressability—"'is an indispensable part of the plaintiff's case' and 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof.'"  *Glynn Env'l Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022).

Assuming for argument's sake that Plaintiff were somehow injured by the Committee's failure to monitor investment options or the fees paid to the Plan's recordkeeper, she would still have no evidence that a judicial remedy would make her better off.  Indeed, the opposite is true.  Because Plaintiff paid only minimal amounts for recordkeeping fees, she would pay *more* annually for recordkeeping if the Court ordered the ERAU Plan to use a flat per-participant fee.  Because Plaintiff would be worse off even if she prevailed, she cannot show redressability.  Nor has Plaintiff produced any evidence showing that another recordkeeper could provide the same services as TIAA for less than the actual fees paid to TIAA.

-16-

As to her claim based on the alleged failure to monitor share classes, Plaintiff has no evidence showing that the Vanguard Target Date Retirement 2035 fund is not a reasonable QDIA, or that a different share class was available with lower costs. Her purported expert does not include any alternative share classes for that fund in his analysis. Pomerantz Rep. (Doc. 83-1), at 7–11. This is likely because the Vanguard Target Date Retirement 2035 fund is a passively managed fund with relatively lower costs (0.08% expense ratio) compared to other actively managed funds.[11]

To show Article III standing, Plaintiff needs evidence that prevailing on her claims would redress her alleged injuries. She has not met her burden of showing redressability. Accordingly, Plaintiff has no Article III standing, and ERAU is entitled to summary judgment.

## II. THE COURT SHOULD GRANT SUMMARY JUDGMENT TO ERAU ON THE MERITS OF PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS

To succeed on her breach-of-duty claims, Plaintiff needs to prove that ERAU used an imprudent process for making plan-related decisions *and* that a decision was substantively unreasonable, resulting in a breach of duty. Order (Doc. 42), at 20; *Huang*, 2023 WL 3092626, at *11; *Nunez v. B. Braun Med., Inc.*, 2023 WL 5339620, at

---

[11] In 2019, the Committee moved the Vanguard Target Retirement funds from Investor into Institutional share classes to take advantage of a lower expense ratio. *See* Ex. 19 (CapTrust's Q3 2019 recommendation for share class changes) (ERAU_002438); Ex. 20 ("Update on Pending Investment Changes") (ERAU_000213–215), at 213. In February 2022, Vanguard merged the Investor and Institutional share classes, resulting in the 0.08% expense ratio currently in effect. *See* Ex. 21 (ERAU_014015–113), at 14086.

*11 (E.D. Pa. Aug. 18, 2023).  Plaintiff also must prove a loss proximately caused by that breach.  *Willett v. Blue Cross & Blue Shield of Ala.*, 953 F.2d 1335, 1343 (11th Cir. 1992).

Plaintiff says ERAU breached its duties in two ways:  (1) by failing to monitor certain investment fund options, resulting in a failure to use lower-cost share classes that were allegedly available to the Plan; and (2) by failing to monitor the fees paid to TIAA as the recordkeeper, resulting in the payment of excessive and unreasonable recordkeeping fees.  But Article III cabins the universe of possible claims Plaintiff can raise, and Rule 56 permits only relevant and admissible evidence to be considered on summary judgment.  Consequently, Plaintiff cannot avoid summary judgment by pointing to purported evidence going to claims she would have no standing to bring.

For her share class claim, Plaintiff would need evidence that ERAU failed to monitor share classes, causing a failure to transfer Plaintiff's investment to a lower-cost share class available for the Vanguard Target Date Retirement 2035 fund.  And for recordkeeping, Plaintiff would need evidence that ERAU failed to monitor TIAA's fees, resulting in her paying unreasonable recordkeeping fees.  She has no evidence to sustain either theory.  As a result, ERAU is entitled to summary judgment on the merits of Plaintiff's claims for breach of fiduciary duty.

### A. Plaintiff Has No Evidence That ERAU Failed To Monitor Her Vanguard Target Date Retirement Fund Or That A Lower-Cost Share Class Was Available

Plaintiff claims generally that ERAU failed to prudently monitor share classes and breached its fiduciary duty by not utilizing lower cost share classes that were

allegedly available to the Plan. To defeat summary judgment on her individual claim, Plaintiff "must come forward with evidence" showing that ERAU failed to monitor the share class of her investment in the Vanguard Target Date Retirement 2035 fund, and showing that a lower cost share class was available, causing damage to Plaintiff. *See Cunningham v. Cornell Univ.*, 2019 WL 4735876, at *17 (S.D.N.Y. Sept. 27, 2019) ("To defeat summary judgment, plaintiffs must come forward with evidence which if believed would allow a reasonable fact-finder to conclude that there was some loss attributable to the failure to swap out a retail fund for an institutional fund.").

Plaintiff has no such evidence. To the contrary, the record evidence shows that "[t]he Committee diligently monitors the performance of all investment options that are offered in the Plan, as well as the fees that are charged to the Plan and the services provided to the Plan." Young Decl. (Ex. 1) ¶ 8; Gissiner Rep. (Doc. 85-9) ¶ 83 (describing how "the Committee, with the assistance of CAPTRUST, conducted periodic share classes analyses"). Moreover, in 2019 the Committee approved moving the Vanguard Target Retirement assets from Investor to Institutional share classes— specifically to take advantage of lower costs (0.15% versus 0.09%, respectively). *See* Ex. 18 (ERAU_002438); Ex. 21 (ERAU_002522–27). The Plan's Vanguard Target Retirement funds remained in Institutional share classes from April 2020 (when TIAA carried out the changes) until February 2022. Ex. 19 (ERAU_000213–215), at 213. At that time, Vanguard merged its Investor and Institutional share classes, resulting in the current 0.08% expense ratio. *See* Ex. 20 (ERAU_014015–113), at 14086.

Plaintiff, who bears the burden of proof, has no evidence that ERAU failed to prudently monitor share classes with respect to the QDIA Vanguard Target Date Retirement fund in which she was invested. Similarly, Plaintiff has no evidence that a less-expensive share class was available but not utilized during the relevant time period.  Accordingly, there is "no genuine dispute as to any material fact," and ERAU "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### B. Summary Judgment Should Be Granted On Plaintiff's Claim That ERAU Breached A Fiduciary Duty By Failing To Prudently Monitor Recordkeeping Fees

To sustain her breach of fiduciary duty claim based on alleged excessive recordkeeping fees, Plaintiff must produce evidence showing that ERAU failed to prudently monitor recordkeeping fees, and that the failure caused her to pay unreasonably excessive fees.  Plaintiff has no such evidence.  To the contrary, it is undisputed that ERAU's Retirement Committee constantly monitored recordkeeping fees with the professional assistance of CapTrust and Fiduciary Benchmarking.  *See* Gissiner Rep. (Doc. 85-9) ¶ 79 ("[T]he Committee's process for monitoring and evaluating the Plan's recordkeeping fees and services was rigorous and consistent with the practices of similarly situated defined contribution plan committees and resulted in meaningful fee reductions during the Relevant Period."); *see also id*. ¶¶ 80–82 (detailing ERAU's process for monitoring and evaluating recordkeeping fees); Young Decl. (Ex. 1) ¶ 16 ("The Committee undertakes a periodic review of TIAA's fees for reasonableness at least on an annual basis and has done so since prior to 2016.").

In addition to the lack of any evidence of imprudent monitoring, Plaintiff lacks any evidence that she suffered damages by paying unreasonable recordkeeping fees. As discussed above, Plaintiff paid no more than $18 in annual recordkeeping fees from 2019 to 2022.  Grenadier Rep. (Doc. 53-2) ¶ 20 & Ex. 7.  There is no admissible evidence that any fees actually paid by Plaintiff were unreasonably excessive. Accordingly, no reasonable factfinder could find that Plaintiff paid excessive recordkeeping fees, and ERAU "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## C.    Plaintiff Has No Evidence Of Damages Caused By ERAU

Finally, a plaintiff must put forward evidence showing she suffered a loss proximately caused by the conduct she challenges.  *Willett*, 953 F.2d at 1343.  While Plaintiff apparently hired experts to calculate damages for ***all*** participants together, *see* Pomerantz Rep. (Doc. 83-1) at 5, she made no effort to establish any individual loss suffered by the Plaintiff and has disclosed no such loss in discovery.  Because Plaintiff has no evidence quantifying her alleged damages, and because damages are an element of her claims, summary judgment is appropriate for ERAU.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant summary judgment in favor of ERAU and dismiss this action with prejudice.

Dated:  April 23, 2024

Respectfully submitted,

/s/  Markham R. Leventhal
Markham R. Leventhal (FBN 616140)
mleventhal@carltonfields.com
Jason H. Gould (*pro hac vice*)
jgould@carltonfields.com
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone:  (202) 965-8100
Facsimile:  (202) 965-8104

Allison O. Kahn (FBN 496138)
akahn@carltonfields.com
CARLTON FIELDS, P.A.
CityPlace Tower, Suite 1200
525 Okeechobee Boulevard
West Palm Beach, Florida 33401-6350
Telephone:  (561) 659-7070
Facsimile:  (561) 659-7368

Irma Reboso Solares (FBN 797073)
isolares@carltonfields.com
Sean W. Hughes (FBN 1038714)
shughes@carltonfields.com
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

*Attorneys for Defendant Embry-Riddle*
*Aeronautical University, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of April, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system.   The NEF for the foregoing specifically identifies the recipients of electronic notice.


/s/  *Markham R. Leventhal*

135345657