# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**GUILLERMINA LOPEZ,**

   **Plaintiff,**

v.             **Case No: 6:22-cv-1580-PGB-LHP**

**EMBRY-RIDDLE**
**AERONAUTICAL UNIVERSITY,**
**INC.,**

   **Defendant.**

## ORDER

  This cause comes before the Court upon Defendant Embry-Riddle Aeronautical University, Inc.'s ("**Defendant**") Motion for Summary Judgment. (Doc. 89 (the "**Motion**")). Plaintiff Guillermina Lopez ("**Plaintiff**" or the "**named Plaintiff**") filed a response in opposition (Doc. 94 (the "**Response**")) and Defendant filed a reply (Doc. 101 (the "**Reply**")). The parties filed a Joint Stipulation of Agreed Material Facts (Doc. 88). Defendant also filed a Notice of Supplemental Authority. (Doc. 104).[1] Upon consideration, the Motion is due to be granted.

---

[1] The Court notes that, after filing the instant Motion, Defendant also filed a pleading entitled Objections Pursuant to Federal Rule of Civil Procedure 56(c)(2) and Motion to Exclude Expert Testimony of Al Otto, Ty Minnich, and Steve Pomerantz. (Doc. 97). To the extent the aforementioned filing contains objections pursuant to Federal Rule of Civil Procedure 56(c)(2), the Court finds those objections should have been raised in Defendant's Reply. However, because the Court nonetheless grants the instant Motion for Summary Judgment, the objections are moot. Further, because the Court grants Defendant summary judgment here, the Court does not reach Defendant's *Daubert* arguments.

I.  **BACKGROUND**

In this purported class action, Plaintiff alleges that Defendant has breached its fiduciary duties under provisions of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("**ERISA**"). (Doc. 1 (the "**Complaint**")). Defendant is a university that maintains a retirement plan for its eligible employees (the "**Plan**"), which is subject to ERISA's provisions. (Doc. 88, ¶ 1). Plaintiff is Defendant's former employee and is a participant in the Plan ("**Plan participant**"). (*Id.* ¶¶ 10, 12).

Plan participants are permitted to select among forty investment options under the Plan. (*Id.* ¶ 3). However, if a Plan participant fails to make a specific selection of investment(s) under the Plan, contributions to the Plan participant's retirement account are automatically placed in the Plan's Qualified Default Investment Alternative ("**QDIA**"). (*Id.* ¶ 4). The QDIA is the Vanguard target date retirement fund that corresponds to the employee's age and expected retirement date. (*Id.*).

Since 2014, the Teachers Insurance and Annuity Association of America ("**TIAA**") has been the only recordkeeper for the Plan.[2] (*Id.* ¶ 8). The amount that each Plan participant pays in recordkeeping fees is "asset-based," meaning the fees are dependent upon the amount of assets in the Plan participant's individual

---

[2] Although Plaintiff's Complaint alleged that there was a second entity—VALIC—that provided recordkeeping services for the Plan, the parties have since stipulated that TIAA was the only recordkeeper for the Plan during the relevant timeframe. (*Compare* Doc. 1, ¶ 90, *with* Doc. 88, ¶ 8).

2

account rather than Plan participants paying identical flat fees for these services. (*See id.* ¶ 9).

Plaintiff was hired by Defendant in July 2019. (*Id.* ¶ 10). Upon becoming a Plan participant, Plaintiff did not select any specific investment options under the Plan. (*Id.*). For that reason, Plaintiff's funds were placed in the QDIA that matched her age and likely retirement date, which was the Vanguard Target Date Retirement 2035 Fund (the "**Vanguard Fund**"). (*Id.*). The Vanguard Fund is the only fund Plaintiff ever invested in during the proposed Class Period.[3] (*Id.* ¶¶ 10, 12). Plaintiff's employment by Defendant ended in September 2023. (*Id.* ¶ 12). As a former employee, Plaintiff may continue as a Plan participant, but is no longer entitled to certain benefits that are only extended to Defendant's current employees.[4] (*See id.* ¶¶ 2, 13).

In the Complaint, Plaintiff asserts that Defendant breached its fiduciary duties to the Plan and the Plan participants through its mismanagement of the Plan. (Doc. 1). As a result, Plaintiff contends that Defendant cost Plan participants millions of dollars in savings. (*See id.*).

Plaintiff generally criticizes two aspects of Defendant's management of the Plan. (*See id.* ¶¶ 60–109). First, Plaintiff claims that Defendant allowed more

---

[3] As is discussed in more detail *infra*, Plaintiff sought to certify a class that included "[a]ll persons, except Defendant's fiduciaries and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between August 2016 and the present (the '**Class Period**')." (Doc. 1, ¶ 34 (emphasis added)).

[4] For example, Plaintiff is no longer entitled to have Defendant "match" up to 4.0% of her contributions to the Plan. (Doc. 88, ¶¶ 2, 13).

expensive funds to be included in the Plan menu than cheaper available alternatives. (*Id.* ¶¶ 60–76). Specifically, Plaintiff alleges that, as to certain mutual funds, Defendant included more expensive share classes in the Plan than identical, lower cost share classes. (*Id.* ¶¶ 60–70). Plaintiff also asserts that Defendant allowed the Plan to be "dominated by high-cost, actively managed funds," which "charged grossly excessive fees" compared with alternative funds of the same type. (*Id.* ¶¶ 71–76).

Second, Plaintiff alleges that Defendant failed to monitor and control the Plan's recordkeeping fees. (*Id.* ¶¶ 77–109). Plaintiff asserts that "Defendant should have been able to negotiate a recordkeeping cost anywhere from $25 per participant to $30 from the beginning of the Class Period to the present" but "simply failed to do so." (*Id.* ¶ 97). Plaintiff avers that, instead, each Plan participant paid between $62.46 and $81.48 annually in recordkeeping fees. (*Id.* ¶ 90). Additionally, Plaintiff alleges that Plan participants paid at least $160.00 annually in recordkeeping fees when one considers both direct and indirect compensation.[5] (*Id.* ¶ 101).

Ultimately, Plaintiff moved for class certification. (Doc. 43). This Court denied the aforementioned motion, holding that class certification was improper

---

[5] Regarding indirect compensation, Plaintiff alleges that these recordkeepers received "revenue sharing payments," wherein payments are derived directly from the Plan's assets, "typically [from] mutual funds." (Doc. 1, ¶ 81). According to Plaintiff, revenue sharing is not equal among funds: some funds pay nothing for revenue sharing, while others pay a substantial amount. (*Id.* ¶ 103). Plaintiff further avers that Defendant permitted TIAA to require that assets pass through a clearing account before being deposited or withdrawn from a Plan participant's individual account. (*Id.* ¶ 108). Plaintiff asserts that TIAA was permitted to earn interest on such assets when they were in its clearing account. (*Id.* ¶ 109).

4

on multiple grounds, including because Plaintiff lacked individual standing in the case. (Doc. 78, pp. 4–8). Importantly, the Court emphasized Plaintiff's failure to articulate any injury in fact that she suffered as a result of Defendant's alleged conduct. (*Id.* at p. 6). For example, the Court pointed to the lack of evidence to support that Plaintiff had invested in any of the challenged funds. (*Id.*). The Court additionally highlighted Defendant's evidence that Plaintiff had never paid more than $18.00 per year in recordkeeping fees. (*Id.* at p. 5 (citing Doc. 53-2, p. 4)). The Court also pointed to the absence of credible evidence regarding the amount of any indirect compensation paid by Plaintiff to TIAA. (*Id.* at pp. 4–5; *see also id.* at n.3). The Court thus concluded that Plaintiff had not demonstrated that she had *herself* suffered economic harm caused by Defendant's imprudence. (*See id.* at pp. 4–8). The Court thus determined that Plaintiff lacked standing to represent a class to which she did not belong and denied her request for class certification.[6] (*See id.*).

Plaintiff subsequently moved to amend the Complaint (Doc. 79 (the "**Motion to Amend**")), in part to add an additional named Plaintiff ("**Ms. Garceau**") who "is invested in at least four (4) of the 'challenged funds' at issue" and who "[t]hus . . . unquestionably has sufficient standing to sue on behalf of the Plan." (*Id.* at pp. 7–8). The Court denied Plaintiff's Motion to Amend. (Doc. 87). Consistent with its Order denying class certification, the Court found that Plaintiff

---

[6] The Court also independently found that Plaintiff's request for class certification should be denied because the class claims were antagonistic and because common questions of fact did not predominate in the case. (Doc. 78, pp. 8–9).

5

lacked standing to amend the Complaint. (*Id.* at pp. 5–6). The Court additionally found that Plaintiff lacked good cause for the requested amendment, noting that the deadline for amending the pleadings had expired more than a year before.[7] (*Id.* at pp. 3, 6–7).

Now, Defendant moves for summary judgment based upon Plaintiff's lack of standing as well as on the merits.[8] (Doc. 89). Plaintiff has responded in opposition, and Defendant has replied. (Docs. 94, 101). The matter is thus ripe for review.

## II.   LEGAL STANDARD

### A.   Summary Judgment

A court may only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. FED. R. CIV. P. 56(c)(1)(A). "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of

---

[7]   Defendant has represented to the Court that Plaintiff's counsel in this action have since "filed the same action with a new named Plaintiff (Karen Garceau), who the Court disallowed as a new named plaintiff in this Lopez matter." (Doc. 97, p. 5 n.4).

[8]   Because the Court finds that Plaintiff has failed to establish standing, it does not reach Defendant's arguments for summary judgment on the merits of Plaintiff's claims.

material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). "The court need consider only the cited materials" when resolving a motion for summary judgment. FED. R. CIV. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam) (holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs and the arguments raised therein).[9]

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). But, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (citations omitted)).

---

[9] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

**B.    Standing**

Under Article III of the United States Constitution, federal courts' jurisdiction is limited to cases and controversies. *E.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Indeed, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation marks omitted)); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)) (same). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper*, 568 U.S. at 408 (quoting *Raines*, 521 U.S. at 818). "The focus of the standing inquiry is 'whether the plaintiff is the proper party to bring the suit.'" *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005) (quoting *Raines*, 521 U.S. at 818).

To establish standing, the plaintiff—as the party invoking the court's jurisdiction—must prove three elements: (1) that the plaintiff "suffered an injury in fact"; (2) that the injury is "fairly traceable to the challenged conduct of the defendant"; and (3) that the injury "is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (first citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); and then citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Importantly:

> Since [these elements] are not mere pleading requirements, but rather an indispensable part of the plaintiff's case, each

8

> element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.

*Lujan*, 504 U.S. at 561 (collecting sources). Accordingly, at the summary judgment stage, a plaintiff cannot rely upon "mere allegations" in order to demonstrate standing. *Id.* Instead, the plaintiff must "submit affidavits or other evidence showing, through specific facts," that the plaintiff has standing to sue. *Id.* at 563.

"In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims." *Bochese*, 405 F.3d at 974. Instead, once the court determines that it lacks subject matter jurisdiction over the case because the plaintiff lacks standing, "the court is powerless to continue." *Id.* at 975–76 (quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)).

## III.   DISCUSSION

In the Motion, Defendant argues that it is entitled to summary judgment because Plaintiff lacks Article III standing. (Doc. 89, pp. 10–17). Specifically, Defendant contends that Plaintiff cannot demonstrate two elements of such standing: injury in fact and redressability. (*Id.*). The Court analyzes these elements in turn.

### A.   Injury in Fact

An injury in fact is the most important element of standing. *E.g.*, *Huang v. TriNet HR III, Inc.*, No. 8:20-cv-2293-VMC-TGW, 2022 WL 13631836, at *3 (M.D. Fla. Oct. 21, 2022) (citing *Spokeo*, 578 U.S. at 338–39). An injury in fact is "an

9

invasion of a legally protected interest" that is both "(a) concrete and particularized" and "(b) actual or imminent, not conjectural or hypothetical." *Luhan*, 504 U.S. at 560 (collecting sources) (internal quotation marks omitted). For an injury to be "concrete," it must "actually exist." *Spokeo*, 578 U.S. at 340 (citing BLACK'S LAW DICTIONARY 479 (9th ed. 2009)). Put differently, an injury is concrete if it is real rather than abstract. *Id.* (citation omitted). Further, for an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Luhan*, 504 U.S. at 560 n.1.

Consistent with these principles, to establish standing, the named plaintiff(s) in a class action must each demonstrate that "they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo*, 578 U.S. at 338 n.6 (quoting *Simon v. E. Ky. Welfare Rts.Org.*, 426 U.S. 26, 40 n.20 (1976)).

Thus, as the Eleventh Circuit has explained, to demonstrate an injury in fact:

> It is not enough [for the plaintiff] to set forth facts from which we could *imagine* an injury sufficient to satisfy Article III's standing requirements, since [the court] should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none. The plaintiff has the burden to clearly and specifically set forth facts sufficient to satisfy [the] Art[icle] III standing requirements. If the plaintiff fails to meet this burden, th[e] court lacks the power to create jurisdiction by embellishing a deficient allegation of injury.

*Bochese*, 405 F.3d at 976 (first quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229–30 (11th Cir. 2000); and then collecting sources) (internal quotation marks omitted)).

In the instant case, Defendant argues that Plaintiff continues to lack evidence demonstrating that she suffered "a concrete, particularized, actual, or imminent injury." (Doc. 89, p. 17). Although Plaintiff has now disclosed the opinions of three experts via expert reports, none of these reports mention the Vanguard Fund, Plaintiff, or the recordkeeping fees paid by Plaintiff during the Class Period. (*Id.* at pp. 17–20). As to the issue of recordkeeping fees, Defendant notes that, consistent with the allegations in the Complaint, Plaintiff's expert Dr. Steven Pomerantz ("**Dr. Pomerantz**") has opined that $25.00 to $35.00 is the maximum annual recordkeeping fee that should have been paid per Plan participant during the Class Period. (*Id.* at p. 19 (citing Doc. 83-1, pp. 4–5)). However, Defendant notes that the only evidence concerning what *this Plaintiff* actually paid in recordkeeping fees remains the opinion of its own expert, Dr. Grenadier. (*See id.* at p. 20 (citing Doc. 53-2, p. 73)). Dr. Grenadier has calculated that Plaintiff has never paid the purportedly unreasonable amount in recordkeeping fees, and that she instead paid between $0.76 and $18.00 annually during the Class Period. (*Id.* (citing Doc. 53-2, p. 73)). Consequently, Defendant argues there is no genuine issue of material fact as to Plaintiff's lack of Article III standing. (*Id.* at pp. 20–21).

Defendant has met its burden of "citing to particular parts of materials in the record" in support of its argument for summary judgment on this ground. *See* FED. R. CIV. P. 56(c)(1)(A). Thus, the burden shifts to Plaintiff to "go beyond the

11

pleadings and present affirmative evidence" showing there is a genuine issue of material fact as to this element of her standing. *See Porter*, 461 F.3d at 1320.

In her Response, Plaintiff asserts that "[c]ourts routinely find Article III standing where plaintiffs allege a reduction, diminution, or loss" of plan assets. (Doc. 94, p. 14, 14 n.10 (first citing *Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 285 F.R.D. 169 (D. Mass. 2012); and then citing *Krauter v. Siemens Corp.*, 725 F. App'x 102, 109 (3d Cir. 2018)). Plaintiff notes that her expert, Dr. Pomerantz, has opined that the *classwide* damages in this case exceed $7,000,000.00. (*Id.* at p. 5 (citing Doc. 94-2, p. 12)). Plaintiff additionally asserts that her expert Mr. Ty Minnich ("**Mr. Minnich**") has opined that, as a result of the Plan's asset-based fee structure, "all Plan participants paid higher fees during the class period as their account balances grew." (*Id.* at pp. 5–6 (quoting Doc. 94-3, p. 15)). Plaintiff thus asserts that all the Plan participants—including Plaintiff—suffered economic harm as a result of Defendant's imprudence. (*Id.*).

"There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). Further, as this Court noted in its Order denying class certification, in *Huang*, a court in this District held that a named plaintiff lacked standing to sue in an ERISA case directly analogous to the case at bar. (Doc. 78, pp. 6–8); *see Huang*, 2022 WL 13631836, at *3–5. There, the named plaintiffs in a putative class action alleged the defendants had acted imprudently in managing their retirement plans. *Huang*, 2022 WL 13631836, at *2. Specifically, the plaintiffs averred that the defendants had allowed high cost, actively managed

12

funds to remain in the investment menu despite the availability of lower cost, passively managed alternatives. *Id*. Similarly, the plaintiffs alleged the defendants had failed to include lower fee share classes than were otherwise available. *Id*. Lastly, the plaintiffs alleged that defendants "failed to monitor or control the [p]lans' recordkeeping expenses," including by allowing for revenue sharing payments to the plans' recordkeepers. *Id*.

The *Huang* court found that one of the named plaintiffs—Mary T. Patterson ("**Ms. Patterson**")—lacked standing, because she failed to demonstrate she had suffered any injury in fact. *Id*. at *4. The court explained that Ms. Patterson had not invested in any of the challenged funds. *Id*. Further, there was no evidence Ms. Patterson had paid excessive recordkeeping fees, as the defendants had demonstrated that "the fees Ms. Patterson actually paid are well below the amount [plaintiffs'] own expert deems reasonable."[10] *Id*. As a result, the court dismissed Ms. Patterson's claims. *Id*.; *accord Sabana v. CoreLogic, Inc.*, No. 8:23-cv-00965-HDV-JDE, 2024 WL 755723, at *1 (C.D. Cal. Jan. 26, 2024) (finding the named plaintiff in a putative class action brought under ERISA for defendants' imprudence in managing its retirement plan lacked standing, because the plaintiff did not invest in any of the challenged funds and had paid less in recordkeeping fees than the amount plaintiff asserted was reasonable).

---

[10] Specifically, the *Huang* court explained that the plaintiffs' expert had opined the reasonable cost of recordkeeping was $36.00 per participant annually, but "[d]uring . . . the two full years in which Ms. Patterson was invested in the [] Plan, she paid $25.80 and $25.96 in recordkeeping fees, respectively." 2022 WL 13631836, at *4.

13

Despite what was surely a keen awareness that the Court was concerned about the named Plaintiff's standing, Plaintiff's Response, much like her expert reports, addresses only the classwide claims.[11] (*See* Docs. 94, 94-2, 94-3, 94-4). Accordingly, Plaintiff fails to establish that she suffered a concrete and particularized injury here. *See Huang*, 2022 WL 13631836, at *4; *Sabana*, 2024 WL 755723, at *1. Further, as Defendant notes in its Reply, the cases Plaintiff cites in support of her standing are inapposite. (Doc. 101, p. 5 n.2). Neither *Glass Dimensions* nor *Krauter* stands for the proposition that a plaintiff need not demonstrate *any* individualized injury to have Article III standing in a case such as this one. (*See id.*).

In *Glass Dimensions*, a Massachusetts district court held that the named plaintiff in a putative class action brought under ERISA had standing to sue as to funds in which the plaintiff had not invested. 285 F.R.D. at 175. However, this was only after the court reaffirmed the requirement that a plaintiff must suffer an injury in fact to have standing. *Id.* at 174. The court found the plaintiff satisfied this requirement because, although the plaintiff had not invested in *every* challenged

---

[11] The Court additionally notes that the facts section of Plaintiff's Response parrots the recordkeeping fees the Complaint avers were paid on a *classwide* basis. (Doc. 94, pp. 10, 13–14). Plaintiff cites to two of her experts' reports after the sentences containing these references. (*Id.* at p. 10 (first citing Doc. 94-2, p. 6; and then citing Doc. 94-4, p. 20); *id.* at pp. 13–14 (citing Doc. 94-4, pp. 15, 20, 23)). However, a review of the cited pages of Plaintiff's experts' reports reveals that they do not contain any mention of the referenced figures. (Doc. 94-2, p. 6; Doc. 94-4, pp. 15, 20, 23). Indeed, the Court's keyword searches for these figures in the cited reports resulted in no matches.

14

fund, the plaintiff *had* personally invested in three of the challenged funds.[12] *Id.* at 174–175.

By contrast, here, Plaintiff appears to concede that she did not invest in any of the challenged funds. (Doc. 88, ¶¶ 10, 12; *see* Doc. 94). Likewise, Plaintiff does not provide affirmative evidence to demonstrate that she suffered a concrete and particularized injury caused by paying excessive recordkeeping fees. *See Porter*, 461 F.3d at 1320; *Luhan*, 504 U.S. at 560 n.1, 561, 563. To the contrary, the only evidence before the Court regarding the recordkeeping fees that were paid by the named Plaintiff are the calculations of defense expert Dr. Grenadier. (Doc. 53-2, p. 73). These calculations suggest that Plaintiff paid an annual recordkeeping fee that Plaintiff's expert has deemed reasonable. (*See id.*); *see also Sabana*, 2024 WL 755723, at *1 ("Here, as [d]efendants have shown, [p]laintiff paid *less* in annual recordkeeping fees than the $40 he considers reasonable. The fact that other plan participants—perhaps even most—may have paid more than this amount has no bearing on [p]laintiff's individual standing.").

Plaintiff's citation to *Krauter* fares no better in helping Plaintiff to establish her standing. *See* 725 F. App'x at 109. There, the Third Circuit held that an ERISA

---

[12] Further, the holding in *Glass Dimensions* is consistent with the holding in *Huang*. *See Huang*, 2022 WL 13631836 at *4–5. *Huang* involved the defendants' alleged imprudence as to two retirement plans, the TriNet III Plan and TriNet IV Plan. *Id.* at *1, 4. Ms. Patterson was the only named plaintiff who had invested in the TriNet III Plan, although she had not invested in any of the funds challenged as to that plan. *Id.* at *4. After dismissing Ms. Patterson's claims for lack of standing, the court allowed the remaining named plaintiffs—who "ha[d] demonstrated an injury in fact by investing in the challenged [TriNet IV Plan] funds and paying allegedly excessive recordkeeping fees"—to sue as to both of the subject plans. *Id.* at *5.

15

plaintiff had adequately alleged an injury in fact where he averred that his personal retirement funds had been moved into investments charging "considerably higher management fees" and which "generated less returns" for the plaintiff than he had experienced before the transfer. *Id.* Plaintiff makes no such showing of a concrete and particularized injury here.[13]

To the extent Plaintiff merely cites to *Glass Dimensions* and *Krauter* to support her assertion that a loss of plan assets can constitute a concrete injury in fact, that is true enough. (*See* Doc. 94, p. 14 n.10). However, Plaintiff nevertheless fails to point to affirmative evidence demonstrating through specific facts that *she* suffered such an injury here. *See Porter*, 461 F.3d at 1320; *Lujan*, 504 U.S. at 563.

Finally, although Plaintiff points to her expert Mr. Minnich's opinion that the Plan's asset-based fee structure caused "all Plan participants [to] pa[y] higher fees during the class period as their account balances grew," Plaintiff fails to demonstrate that the asset-based fee structure resulted in her injury by causing her to pay an unreasonable amount in such fees. (Doc. 94, pp. 4–5 (quoting Doc. 94-3, p. 15)). Indeed, as Defendant notes in its Reply, this opinion does not establish that Plaintiff suffered a particularized injury, and instead "simply describes how all asset-based fees structures work." (Doc. 101, p. 6).

---

[13] The Court also notes that *Krauter* was decided at the motion to dismiss stage, and consequently, the issue concerned only whether the plaintiff had adequately alleged an injury in fact. 725 F. App'x at 106–07.

16

As a result of the foregoing, Plaintiff has failed to demonstrate that she suffered an injury in fact, and Defendant is thus entitled to summary judgment as to Plaintiff's lack of standing.

**B.  Redressability**

Because the Court has already found that Defendant is entitled to summary judgment due to Plaintiff's failure to demonstrate any injury in fact, the Court need not go further in its standing analysis. *See Bochese*, 405 F.3d at 980 ("Because we conclude that Mr. Bochese has failed to establish an injury in fact, we need not and do not consider whether the remaining elements of standing are present."). However, the Court briefly analyzes the element of redressability and finds that Plaintiff has failed to establish this additional element of her standing.

The third element of standing, known as "redressability," requires a plaintiff to demonstrate that the plaintiff's injury "is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (first citing *Lujan*, 504 U.S. at 560–61; and then citing *Friends of the Earth*, 528 U.S. at 180–81). Here, Defendant aptly argues that, even if Plaintiff had established an injury in fact, "she would still have no evidence that a judicial remedy would make her better off," and "[i]ndeed, the opposite [may be] true." (Doc. 89, p. 21). Because the only evidence before the Court suggests that Plaintiff paid minimal recordkeeping fees, it is conceivable that she benefitted from the practices that she purports were imprudent. (*See id.*). Further, in her Response, Plaintiff has failed to point to any specific facts demonstrating otherwise. (*See* Doc. 94); *Lujan*, 504 U.S. at 560 n.1, 561, 563. Thus,

17

Plaintiff has failed to demonstrate that there is a genuine issue of material fact regarding the element of redressability. *See Porter*, 461 F.3d at 1320.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's lack of standing.

## IV. CONCLUSION

For these reasons, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 89) is **GRANTED**.

2. The Court finds that it lacks subject matter jurisdiction in this action because Plaintiff lacks standing. Thus, the case is **DISMISSED WITHOUT PREJUDICE**.[14]

3. The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on November 13, 2024.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[14] Plaintiff correctly notes that a finding by this Court that Plaintiff lacks standing should result in the Court's dismissal of the case without prejudice rather than a final judgment on the merits. (Doc. 94, p. 17); *see Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007) (explaining that a court's finding that it lacks subject matter jurisdiction should result in dismissal of the case even if the court reaches this decision at the summary judgment stage); *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1235 (11th Cir. 2021) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." (internal quotation omitted)).